TOBRINER, J.
 

 An award of compensation for a carpenter’s loss of a finger in using his power saw at home after sustaining an industrial injury to his eye must be sustained if substantial evidence supports the commission’s finding that the injury to the eye proximately caused the loss of the finger. Petitioner defines causation narrowly and maintains the carpenter’s “negligence” destroyed it. We do not believe that, as a matter of law, this court, accepting petitioner’s definition of causation, can on this record upset the commission’s finding. As an alternate reason in support of the award we submit that this definition is too narrow; the broader concept that the first injury need be only a contributing factor as to the second, rather than the sole proximate cause, is the test truly appropriate, and, under it, the award should not be set aside. We discuss these propositions
 
 infra.
 

 We are concerned here with two injuries, their incidence and interrelationship. The first occurred on February 15, 1957, when the respondent Wallin, a carpenter by occupation, born in 1904, suffered an industrial injury to his left eye. A rusty nail which he was driving into the floor flew up and penetrated his eyeball. The next day an iridectomy (“ [t]he cutting out of a part of the iris”—New Gould Medical Dictionary, p. 519) was undertaken. On May 5, 1957, the doctor released Wallin to return to work. Pursuant to the initial prognostication, however, further surgery became necessary, and a discission of the secondary membrane of the injured eye was performed. Later the attending doctor told Wallin he could return to work on April 7, 1958. At the hearing of November 12, 1958, Wallin testified that the physician did not tell him absolutely he could thus commence work but that “you could not go to work until you get yourself adjusted. Tie said you wouldn’t be able to get yourself adjusted for a couple of months.” (Transcript, Hearing 11-12-58, p. 21, lines 21-24.)
 

 The second injury occurred on April 11, 1958. Wallin had not returned to work because he continued to suffer aftereffects from the operation which he described in these bizarre terms:“...! could not go back to work then because I was so badly boozed up, [I] walk[ed] around like I am half drunk. ’’
 
 (Idem,
 
 p. 22, lines 21-23.) The commission concluded,
 
 *13
 
 however, that the reference was not to the effects of alcohol but to those of the eye condition. At this point the employee “still . . . [had] a double vision. ...” (P. 15, 1. 20.) He further stated that at this time “things were diffused” and “being out of the hospital does something to you mentally. I don’t know what it is.” (P. 13, lines 21-23.)
 

 On this date, Wallin was making rough cuts of “junk” lumber at his home for use in his fireplace. Because the wood was too large, he used an electric power hand saw to cut it to proper size. He placed the pieces of lumber on a saw horse and held the longer end of the plank with his knee. After cutting off a piece he would move the board over to sever the next piece. While Wallin was thus sawing the lumber, the saw “jumped and kicked,” amputating one of his fingers.
 

 When asked at the hearing, “ [Y]ou don’t really recall what happened?” Wallin answered. “Why no. I had the saw horse. You put the lumber on saw horse. You do these things automatically . . . the same way-”
 
 (Idem,
 
 p. 24, lines 1-5.)
 

 To the question, “As far as how your hand slipped or what— you really don’t know?” he answered, “I do not know.” (P. 24, lines 12-14.) The employee, likewise, confronted by the question, “Do you think that your eye affected you in any manner or the condition of your injured eye affected you in any manner in the use of the saw on April 11, 1958?” answered, “I believe so.” And again when asked, “Were you suffering from double vision at that time?” he said, “Well, certainly.” (P. 15, lines 12-26.)
 

 The referee found that the injury to the eye on February 15, 1957, proximately caused further disability in the loss of the finger. In the petition for reconsideration petitioner for the first time raised the defense of Wallin’s negligence. Upon denial of the petition, petitioner filed this petition for a writ of review.
 

 The role of the appellate court in passing upon the commission’s award, as in reviewing the judgment of a trial court, is limited. In discussing the instant problem of proximate causation, the court in
 
 Limited M. C. Ins. Co.
 
 v.
 
 Industrial Acc. Com.
 
 (1940), 37 Cal.App.2d 50, 53 [98 P.2d 837], said: “It is the function of the commission, as the trier of facts, to determine, as a fact, the proximate cause of the injury. Its finding in this regard, if supported by any evidence, cannot be disturbed by this court.” Likewise in
 
 Massachusetts B. & I. Co.
 
 v.
 
 Industrial Acc. Com.
 
 (1939), 36 Cal.App.2d 96 [96 P.2d 1009], the court held: “ [I]t is incumbent upon the commission
 
 *14
 
 to determine
 
 as a fact
 
 the proximate cause; that is, whether a second injury is an independent occurrence, or the proximate and natural result of the first injury.” (P. 98; emphasis added.)
 

 Applying these canons of interpretation we must determine if the record supports the commission’s conclusion that “ [s]aid injury proximately resulted in further disability consisting of amputation of the index finger of applicant’s right hand on April 11, 1958” (Findings and Award, 12-18-58, p. 2, paragraph 5) and whether or not Wallin was negligent. Finally, assuming such negligence, we must determine if it broke the chain of causation.
 

 To rule as a matter of law that the evidence was insufficient to support this finding we would be compelled to disregard: (1) the testimony that Wallin was suffering from defective vision at the time; (2) the fact that this condition offers at least a more reasonable explanation of the accident than any other, particularly when the employee, an expert in the use of the saw, had never in the many years he had used it undergone any trouble with it, and that he manipulated it here in the usual manner; and (3) his own explanation of the accident. The commission could properly give weight to the employee’s testimony on this subject.
 
 (Swanson
 
 v.
 
 Williams & Co.
 
 (1951), 278 App.Div. 477 [106 N.Y.S.2d 61, 63-64].) We conclude that we cannot superimpose our judgment upon that of the commission in the light of the rules of interpretation and the facts in the record.
 

 We turn to the problem of the alleged intervening negligence of the employee. Here the commission states upon the petition for reconsideration that “ [i]t was not even charged that applicant was guilty of negligence or misconduct, much less proved.” (Report of Referee on Petition for Reconsideration, 1-5-59, p. 2, lines 7-8.) The substance of the commission’s complaint is that petitioner’s failure to raise the issue prevented the primary investigative body from making any finding on this vital question. Nevertheless we shall examine the record to determine if this court, pursuant to the decisions, should rule that the finger injury did not proximately result from the eye injury but from'the claimant’s intervening fault.
 

 Again, in this determination we cannot “substitute our views for those of the commission . . . unless there is no substantial evidence to support the findings and order.”
 
 (State Emp. etc. System
 
 v.
 
 Industrial Acc. Com.
 
 (1950), 97 Cal.App. 2d 380, 382 [217 P.2d 992].) In
 
 Douglas Aircraft, Inc.
 
 
 *15
 
 v.
 
 Industrial Acc. Com.
 
 (1957), 47 Cal.2d 903, 905 [306 P.2d 425], the Supreme Court stated: “When a finding of fact of the Industrial Accident Commission is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court
 
 begins
 
 and
 
 ends
 
 with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact.” To the same effect:
 
 Reinert
 
 v.
 
 Industrial Acc. Com.
 
 (1956), 46 Cal.2d 349, 358 [294 P.2d 713];
 
 Gonzales
 
 v.
 
 Industrial Acc. Com.
 
 (1958), 50 Cal.2d 360, 364 [325 P.2d 993] ; Labor Code, section 5953.
 

 The early ease of
 
 Pacific Coast Casualty Co.
 
 v.
 
 Pillsbury
 
 (1915), 171 Cal. 319 [153 P. 24], upon which petitioner heavily relies for its proposition that Wallin’s negligence here broke the chain of causation, does not, upon close analysis, rule upon a situation in which, as here, the commission made a specific finding on causation. In that ease the employee sustained an industrial injury consisting of a broken arm and a dislocated wrist. During the healing process, the employee took a trip and a “slip or shift of the partly knit bone was caused by something other than natural causes, either by carelessly using the arm or by a new accident.” (P. 320-321.) As the court points out, “The commission
 
 made no finding concerning the cause of the slipping
 
 of the bone ... other than the general finding that by reason of said accident and injury the applicant sustained a temporary, total disability____” (P. 321; emphasis added.) There was no finding that “it was due to natural causes.” The employee “said nothing about it [the cause of the slipping], and he was not asked to do so.”
 
 (Idem.)
 
 Although the court set aside the award of compensation for an additional disability due to the slipping of the broken parts of the bone, the case certainly does not question the rule that the commission’s specific finding of proximate causation supported by evidence should not be nullified by this court.
 

 This interpretation of that case finds confirmation in
 
 Head Drilling Co.
 
 v.
 
 Industrial Acc. Com.
 
 (1918), 177 Cal. 194 [170 P. 157]. There an employee who suffered an industrial injury consisting of a fracture of his left leg sustained a further injury after release from the hospital when he arose from a chair to reach for some pictures on a shelf behind him and, a wrinkle in the rug straightening out, he struck the heel of the injured leg. Here the commission found that the second separation was “ ‘a proximate and natural result of the original injury. ’ ” The court said, “Whether the subsequent
 
 *16
 
 incident or accident is such, or should be regarded as an independent, intervening cause is a question of fact for the commission, to be decided in view of all the circumstances, and its conclusion must be sustained by the courts whenever there is any reasonable theory evidenced by the record on which the conclusion can be upheld. ” (P. 197.)
 

 The court comments on the Pillsbury case to the effect that “[i]t was fully recognized in that case, we think, that the subsequent injury may be the proximate result of the injury received in the course of the employment, and compensable under the act, and the finding to that effect
 
 in this matter
 
 has sufficient support in the evidence.” (P. 198; emphasis added.)
 

 Since the commission in our case did find that the first injury ‘1 proximately resulted in further disability consisting in amputation of the index finger,” we may set it aside upon the ground that applicant’s negligence caused the injury only if the commission’s contrary finding is not sufficiently supported in the record. The following salient facts controvert the claim of negligence, however, supporting that finding: (1) the cutting of the firewood was a comparatively simple task to an expert carpenter who had long used the power saw without incident; (2) the use of the saw did not violate any order of the doctor, and the absence of such proscription is an important element negating negligence
 
 (Beech Creek Coal Co.
 
 v.
 
 Cox
 
 (1951), 314 Ky. 743 [237 S.W.2d 56, 57]); (3) the physician had ordered the employee to exercise his eyes; the employee was obviously attempting to rehabilitate himself and had been told by the physician he could return to work as soon as he did so, and, indeed, the physician had previously informed the employee he could resume work on April 7, four days
 
 before
 
 the second injury; (4) the petitioner’s charge that the saw was unguarded and that the employee acted negligently in using it cannot stand because (a) there is no evidence in the record as to what safety features the saw did or did not require, (b) the burden of producing such evidence rested upon petitioner, (c) the safety orders of the Division of Industrial Safety, upon which petitioner relies, apply to places of employment rather than to the employee’s home (Cal. Admin. Code, tit. 8, § 3202), (d) finally, assuming its pertinence, the record does not show that petitioner was aware of Bulletin 141, issued July, 1957, by the California Division of Industrial Safety, as to the method of cutting planks.
 

 We conclude that sufficient evidence in the record supports the commission’s finding that the eye injury proximately
 
 *17
 
 caused the loss of the finger; we do not believe the record compelled the commission to find that respondent Wallin was negligent. Even assuming Wallin’s negligence, however, we shall point out that in the framework of compensation law such negligence would not insulate the original injury from acting as a contributing cause and that as such it sufficiently supports the award.
 

 Turning to this independent and alternate ground for upholding the award, we believe the definition of causation as applied to the second injury must not be a narrow one of tort law but a broader concept of compensation law. Thus the first injury need not be the exclusive cause of the second but only a contributing factor to it; in this view the presence of contributory negligence in itself would not break the causative connection unless the intervening negligence were the sole and exclusive cause of the injury. So long as the original injury operates even in part as a contributing factor it establishes liability.
 

 Petitioner
 
 agrees
 
 that “the primary, industrial injury” need not “be the
 
 sole
 
 proximate cause”; “ [i]t is sufficient if it is a contributing” cause. But petitioner maintains that, even so, the alleged negligence, as an “intervening” or “superseding” cause “cuts off the chain of causation.” (Petitioner’s Reply Brief, p. 4.) Once, however, the premise of contributing cause is accepted, we submit that causation could be broken only by an intervening act which itself is the sole and exclusive cause of the ultimate injury. Only by such total severance does the original cause become ineffective and cease to “contribute. ’ ’
 

 This court has recognized that the test of proximate causation in workmen’s compensation at least as to the original injury is not identical with that of tort. In holding compensable the death of a bartender killed by a shot intended for a customer, Justice Bray, in
 
 Industrial Indem. Co.
 
 v.
 
 Industrial Acc. Com.
 
 (1950), 95 Cal.App.2d 804, 807 [214 P.2d 41], said, “The serious question is whether the injury was ‘proximately caused by the employment.’ In determining this question, it is advisable to consider the trend of the courts in determining what is considered ‘proximately caused by the employment.’ When the Workmen’s Compensation Act was first adopted in California the courts construed this phrase very narrowly. ... As time went on, however, the courts more and more adopted the spirit of the act and more and
 
 *18
 
 more began to throw off the restrictive bonds of the rules they had prescribed. ...”
 

 Indeed the California courts have constantly warned against atavistic attempts to retain common law concepts of tort and negligence in the compensation field.
 
 Western Pac. R.R. Co.
 
 v.
 
 Industrial Acc. Com.
 
 (1924), 193 Cal. 413, 421 [224 P. 754], reminds that " [t] he fact that an employee is guilty of ordinary negligence in any given case cannot be said ... to impose a risk and responsibility upon an employer not incidental to the employment. . . . Such a defense would be tantamount to a defense of contributory negligence expressly abolished in workmen’s compensation eases.” See also
 
 California C.I. Exch.
 
 v.
 
 Industrial Acc. Com.
 
 (1936), 5 Cal.2d 185,187 [53 P.2d 758];
 
 Truck Ins. Exchange
 
 v.
 
 Industrial Acc. Com.
 
 (1946), 27 Cal.2d 813, 816 [167 P.2d 705].
 

 The old and strict concept of proximate causation, followed in many tort cases, which would insist here that the eye injury be the
 
 sole
 
 cause of the finger injury, conceiving of an intervening negligence as severing causation, should then succumb in Avorkmen’s compensation to a more liberal rule that the first injury need be no more than a contributing cause to the second.
 

 The court applies this concept to an occupational disease in
 
 Colonial Ins. Co.
 
 v.
 
 Industrial Acc. Com.
 
 (1946), 29 Cal.2d 79, 83 [172 P.2d 884]. That case involved the assessment of liability
 
 to
 
 one of a multitude of employments in which an employee suffering from silicosis had been exposed to silica dust. The court said: “ [A] particular employment is not required to be the sole proximate cause of a disease. As long as it substantially and proximately contributed to it, the employer may be held liable for the full disability. ’ ’
 

 In the recent case of
 
 Madin
 
 v.
 
 Industrial Acc. Com.
 
 (1956), 46 Cal.2d 90, 92 [292 P.2d 892], in defining and enforcing the employer’s liability for an injury caused by actions of third parties, Justice Carter stated, “ ‘If avc look for a causal connection between the employment and the injury, such connection need not be the sole cause; it is sufficient if it is a contributing cause. ’ ” See also
 
 Wiseman
 
 v.
 
 Industrial Acc. Com.
 
 (1956), 46 Cal.2d 570 [297 P.2d 649].
 

 While it is true that these cases involve the original, and not a subsequent, injury, they indicate an approach to our problem. And the jurisdictions of both New York and New Jersey do 1‘oIIoav the rule that the first need only be a contributing, rather than sole, proximate cause of the subsequent injury.
 
 Swanson
 
 v.
 
 Williams & Co., supra
 
 (1951), 106 N.Y.S.
 
 *19
 
 2d 61, is illustrative. An employee, who still used crutches because of an accident two years before, fell on a stairway and died of a fractured skull. Although the evidence disclosed the employee was intoxicated at the time of the fall, the Industrial Board found “the second accident was ‘causally related to and consequential upon ’ the first one.... ” The court said: “ When these findings are taken in their totality it will be seen that intoxication is not ruled out of causation; it is held, merely, not to be a sole cause.
 
 The original accident has been found to be a contributing cause.”
 
 (P. 63; emphasis added.)
 

 Cresci
 
 v.
 
 Mike Krasilousky Trucking Co.
 
 (1958), 5 App. Div. 2d 569 [172 N.Y.S.2d 322], follows
 
 Swanson.
 
 The injured employee, who was using an artificial limb, slipped upon a sidewalk hole and died from complications in the consequent surgery. The court stated: “The Swanson case also established the proposition
 
 that the prior accident need be but a contributing cause of the subsequent one
 
 and that the concurrence of an additional cause (such as employee’s intoxication in that case and the possible negligence of a third party in this) in no way relieved the employer from liability.” (P. 325; emphasis added.)
 

 While petitioner relies upon
 
 Sullivan
 
 v.
 
 B & A Const., Inc.
 
 (1954), 307 N.Y. 161 [120 N.E.2d 694], as establishing a different rule, this decision is actually distinguished in
 
 Dickerson
 
 v.
 
 Essex County
 
 (1956), 2 App.Div.2d 516 [157 N.Y.S.2d 94], a case in which the employee suffered three separate injuries. Holding “there was an unbroken chain of causation which linked all three events, ’ ’ the court said: "The appellant County argues that the activity undertaken by Dickerson [his return to work a short time after the second injury] constituted an intervening cause which broke the chain of legal causation, citing
 
 Sullivan
 
 v.
 
 B & A Construction, Inc.,
 
 [citations]. But the Sullivan case turned upon the rashness of the claimant’s conduct in undertaking to drive an automobile without auxiliary equipment, at an immoderate rate of speed, despite the fact that he knew that his knee was likely to lock and render him incapable of using the foot brake. In that situation, the court
 
 held
 
 that
 
 the
 
 ‘claimant’s own
 
 temerity’
 
 was primarily responsible for the subsequent accident. In the present case, the decedent’s conduct was not temerarious or rash.” (P. 97.)
 

 Randolph
 
 v.
 
 E. I. Du Pont De Nemours & Co.
 
 (1943), 130 N.J. 353 [33 A.2d 301], states the New Jersey rule: “ ‘It is better, however, to put the matter in the plain English used
 
 *20
 
 by Lord Loreborn in bis judgment in the House of Lords in a case arising under the English statute. . . . “It seems to be enough if it appears that the employment is one of the co-n
 
 tributing causes
 
 without which the accident which actually happened would not have happened, and if the accident is one of the
 
 contributing causes
 
 without which the injury which actually followed would not have followed.” ’ ” (P. 302; emphasis added.) To the same effect:
 
 Hartman
 
 v.
 
 Federal Shipbuilding & Dry Hock Co.
 
 (1951), 11 N.J. Super. 611 [78 A.2d 846].
 

 These cases interpret proximate causation in compensation eases to mean that the first need only be a contributing factor to the second injury. Such a construction derives from the latitude in the definition of proximate causation. The concept of proximate causation has given courts and commentators consummate difficulty and has in truth defied precise definition. Its variegated threads can be woven into either loose or tight patterns, and we cannot believe the Legislature using the term in the context of liability without fault meant to designate a strict design. Every precept of construction in the Act argues for the liberal interpretation.
 

 Moreover, the employee's negligence actually is as irrelevant in the second injury as it admittedly is in the first. The fact that the workman suffers a secondary consequence of the first injury should not work a mystic change in the nature of the applicable test. While the petitioner argues that the employer is entitled to be protected against secondary injuries which are not the result of “foreseeability” or are the result of the employee’s “negligence,” this concept should no more be imported here than for the initial injury.
 

 Finally, since the original injury contributed to the second, and operates as an efficient cause of it, the second is a consequence of the first injury. The employee is entitled to protection from such consequence. To deny such protection is to tie compensation into the concept of fault: here, indeed, not the first, but a later negligence. Here, moreover, the negligence is only a partial cause of the injury; hence the importation of the concept is both attenuated and inappropriate.
 

 We submit the above principles would support the commission in so applying the proximate cause doctrine as to require only contribution to, and not totality of, causation. We recognize that this interpretation does not find approval by some commentators (1 Larson, The Law of Workmen’s Compensation, § 13.11, p. 183) or by some courts in eases cited by
 
 *21
 
 petitioner (i.e.,
 
 Yarbrough
 
 v.
 
 Polar Ice & Fuel Co.
 
 (1948), 118 Ind.App. 639 [79 N.E.2d 422, 424]) but we believe the -ciViinsiioc may properly view causation in the special context and circumstance of the compensation field.
 

 In any event the finding of the commission on causation in this case should not be upset upon this record.
 

 The award is affirmed.
 

 Bray, P. J., and Foley, J. pro tem.,
 
 *
 
 concurred.
 

 Petitioner’s application for a hearing by the Supreme Court was denied February 3, 1960.
 

 *
 

 Assigned by Chairman of Judicial Council.