**Ruth J. COOK, Widow of James Cook, Deceased, Appellant,**

v.

**ALASKA WORKMEN'S COMPENSATION BOARD, Carroll Creek Logging Co., and Fireman's Fund Insurance Co., Appellees.**

No. 1168.

Supreme Court of Alaska.

Oct. 23, 1970.

Douglas L. Gregg, of Gregg, Kohls & Schulz, Juneau, for appellant.

F. M. Doogan, of Faulkner, Banfield, Boochever & Doogan, Juneau, for appellees.

Before BONEY, C. J., DIMOND, RABINOWITZ, and CONNOR, JJ. and FITZGERALD, Superior Court Judge.

## OPINION

CONNOR, Justice.

This is an action seeking reversal of a decision of the Alaska Workmen's Compensation Board which denied death benefits to the widow of James Cook. The Superior Court affirmed the decision of the board.

Cook, a laborer, truck driver and logger, sustained back injuries while attempting to lift a heavy boulder off a California roadway in 1959. Effects of this back injury were still present at the time of his death in 1967.

On August 27, 1966, Cook was again injured. At the time of this second accident he was working for the Carroll Creek Logging Company near Ketchikan, Alaska. He was struck by a log causing injury to his neck and back. The insurance carrier paid compensation for temporary and total disability and for medical benefits until early in May 1967. In a letter to the Alaska Workmen's Compensation Board dated May 8, 1967, the carrier controverted further benefits on the ground that the relation between Cook's condition and the August 27, 1966 accident was "remote." On June 1, 1967, Cook applied to the Workmen's Compensation Board for adjustment of his claim; a hearing on the matter was set for June 29, 1967, but it was later continued.

On June 17, 1967, Cook was involved in a single vehicle accident in Oregon. For reasons which are at issue here, he drove his vehicle off the highway and struck either a tree or a utility pole. He sustained multiple injuries, including a dislocated fracture of the left hip. Cook died unexpectedly on June 27, 1967. According to the death certificate, he died from a pulmonary embolus, caused in turn by the dislocated fracture of the hip. Mrs. Cook thereafter filed a claim for death benefits under the Alaska Workmen's Compensation Act.

The matter was heard by the Alaska Workmen's Compensation Board on February 15, 1968. In its decision the board dismissed the claim that Cook's death resulted from the August 27, 1966, injury in Alaska. It did conclude, however, that temporary total disability compensation was payable to the date of death. In reaching its decision to dismiss the claim for death benefits, the board determined the following:

First, that there was no orthopedic relationship between the automobile accident and the injury of August 27, 1966; second, that if Cook fainted before the automobile accident, the fainting spell resulted from a cause or causes unknown and not from hyperventilation caused by pain from the neck injury sustained in August 1966; third, that Cook's neck pain dated back to the 1959 accident in California and was "probably aggravated" by the 1966 accident in Alaska;[1] fourth, that Cook's statement to Dr. Rask, his Oregon physician, that Cook had turned his head to the left, experiencing an excruciating pain, and that he had blacked out just prior to striking the tree or utility pole was not a dying declaration (and therefore presumably inadmissible at the hearing) since Cook was not aware of the impending pulmonary embolus.

Although the appellant lists some 14 questions for review by this court, it is our belief that there are actually only two questions which must be answered in this appeal: First, should the board have considered Cook's statements to Dr. Rask concerning the cause of the automobile accident? Second, did the board have substantial evidence to support its conclusion that Cook did not crash his vehicle as a result of conditions caused at least in part by injuries either sustained in or aggravated by the accident of August 27, 1966?

## COOK'S STATEMENTS TO DR. RASK

In his description of treatment and impressions regarding James Cook, shortly after his death, Dr. Rask related the following:

"He finally regained his memory and on close examination apparently the patient had neck pain prior to a blacking out episode prior to the automobile accident.

---

1. The board also determined that such aggravation did not cause certain filling shown in myleograms and that cervical procedures planned by Dr. Rask were necessitated by the natural progress of disc disease rather than by the "aggravation."

It was my opinion that the patient's loss of control of the automobile was due to the herniated disc in his neck, which had previously been shown on myelogram."

Dr. Rask reiterated the sequence of events preceding Cook's death in his deposition of February 6, 1968:

"Q. And was he (Cook) able to relate to you how this accident occurred?

A. Yes, on several occasions.

Q. What was the history?

A. Specifically he said he turned his head to the left to see something and had a fainting spell when he turned his head to the left and lost control of the vehicle and struck a utility pole."

In its conclusions of law the board stated that:

"The Board concludes that if the applicant fainted, and the Board considers Dr. Rask's statement as to what the applicant told him on six different occasions not to be a dying declaration since applicant was not aware of the impending pulmonary aembolus, that such fainting spell was not due to hyperventilation caused by pain from the neck injury sustained on August 27, 1966, but that it was due to cause or causes unknown."

A close reading of this conclusion makes it clear that the board excluded the testimony of Dr. Rask relating the statements made to him by Cook. Apparently the board believed that the testimony could not be considered since it did not come within a recognized exception to the hearsay rule.

We are of the opinion that the board erroneously excluded this testimony. Our conclusion is based on a number of considerations.

First, the Alaska Workmen's Compensation Act specifically allows the admission of statements of deceased employees. AS 23.30.135(a) provides in part:

"Declarations of a deceased employee concerning the injury in respect to which

the investigation or inquiry is being made or the hearing conducted *shall* be received in evidence * * *." (Emphasis added.)

Clearly this language is mandatory.

Second, hearsay evidence, in any event, is admissible at board hearings and such evidence need not be brought within any of the established exceptions to the hearsay rule. In Brown v. Northwest Airlines, Inc., 444 P.2d 529 (Alaska 1968) we concluded that AS 44.62.460(d) of our Administrative Procedure Act applies to compensation proceedings. That section reads in part:

"(d) The hearing need not be conducted according to technical rules relating to evidence and witnesses. * * * Hearsay evidence may be used to supplement or explain direct evidence but is not sufficient by itself to support a finding unless it would be admissible over objection in a civil action. * * *"[2]

The quoted language specifically allows for the consideration of hearsay evidence.

Further, AS 23.30.135(a) specifically sets out the basic rules of evidence to be applied by the Workmen's Compensation Board and provides in part:

"(a) In making an investigation or inquiry or conducting a hearing the board is not bound by common law or statutory rules of evidence * * *."

The New York Court of Appeals had occasion to interpret a statute very similar to AS 23.30.135(a). In Carroll v. Knickerbocker Ice Company, 218 N.Y. 435, 113 N.E. 507 (1916) the provisions being interpreted read as follows:

"*Technical Rules of Evidence or Procedure Not Required.* The Commission or a commissioner or deputy commissioner in making an investigation or inquiry or conducting a hearing shall *not* be bound by common law or statutory rules of evidence or by technical or formal rules of procedure, except as provided

2. The provisions of this section are incorporated into the rules of the board governing hearings of disputed claims. 8 Alaska Adm.Code § 436(e) (1959).

by this chapter; but may make such investigation or inquiry or conduct such hearing in such manner as to ascertain the substantial rights of the parties." 113 N.E. at 508.

In holding that this provision changed the law of New York which would have excluded incompetent evidence, the court declared:

"This section has plainly changed the rule of evidence in all cases affected by the act. It gives the Workmen's Compensation Commission free rein in making its investigations and in conducting its hearings, and authorizes it to receive and consider, not only hearsay testimony, but any kind of evidence that may throw light on a claim pending before it." 113 N.E., at 508.

We find this approach persuasive and in harmony with the purposes of the Alaska Workmen's Compensation Act, the Administrative Procedure Act, and the rules and regulations of the board.[3]

■ We conclude that the board erroneously excluded the evidence. It was not necessary for the claimant to bring this evidence within an exception to the hearsay rule, and the compensation act specifically renders the evidence admissible.

## WERE THE FINDINGS SUPPORTED BY SUBSTANTIAL EVIDENCE?

We have previously had an opportunity to state what we believe is our proper role in reviewing a decision of the Workmen's Compensation Board. In Morrison-Knudsen Company v. Vereen, 414 P.2d 536, 542 (Alaska 1966), we said that

"Our review is limited to a determination of whether the Board's findings were supported by substantial evidence in the light of the whole record." (Citations omitted.)

Substantial evidence has been defined by this court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] We also determined in Morrison-Knudsen that in the case of conflicting evidence, on review, "it is not our province to weigh the evidence or to choose between competing inferences reasonably to be drawn from the evidence."[5]

■ In evaluating the basis for a board decision, we are also provided with statutory guidance. AS 23.30.120(1) provides:

"In a proceeding for the enforcement of a claim for compensation under this chapter it is presumed, in the absence of substantial evidence to the contrary, that (1) the claim comes within the provisions of this chapter."

Doubt as to what medical testimony establishes should be resolved in favor of compensating the employee. Thornton v. Alaska Workmen's Compensation Board, 411 P.2d 209 (Alaska 1966). Furthermore, a pre-existing disease or infirmity does not disqualify a claim if the work "aggravated, accelerated or combined with the disease or infirmity to produce the death." 411 P.2d at 210; Brown v. Northwest Airlines, 444 P.2d 529 (Alaska 1968).

■ Under these principles we conclude that the record before us does not disclose substantial evidence which would support the dismissal of the death benefit claim by the board. Initially we observe that the board itself found that the 1966 injury aggravated the neck pain resulting from the 1959 injury.

3. It can also be noted that there was no objection made by appellee to the admission of the statements of Cook to Dr. Rask. The entire deposition of Dr. Rask was read into the record without objection or request for its exclusion. In Brown v. Northwest Airlines, Inc., 444 P.2d 529, 535 (Alaska 1968), we also pointed out that a party cannot complain about the admission or use of hearsay evidence by the board in the absence of an objection.

4. Thornton v. Alaska Workmen's Compensation Board, 411 P.2d 209 (Alaska 1966). See also Fischback & Moore of Alaska, Inc. v. Lynn, 407 P.2d 174, 177 (Alaska 1965); R.C.A. Service Co. v. Liggett, 394 P.2d 675 (Alaska 1964).

5. Morrison-Knudsen Company v. Vereen, 414 P.2d 536, 543 (Alaska 1966).

Next, we note that there were several plausible theories which would explain why Cook could have passed out just before he struck the tree or utility pole. The expert testimony of Dr. Rask indicated that Cook could have blacked out due to hyperventilation from the pain from compression of the vertebral artery (in the neck) or from pain which could have resulted from a pinched nerve. Dr. Cavitt, also an expert witness for appellant, agreed that hyperventilation could have caused a blackout, although he disagreed with Dr. Rask as to the amount of time which would be required for the blackout to occur. Dr. Cavitt offered an alternative theory that Cook simply passed out from the direct effect of extreme pain. In response to a question regarding the possible reasons for Cook's blacking out, Dr. Cavitt explained:

"* * * the point comes up whether or not a man with cervical disc disease who had turned his head could experience a pain which would cause him to faint, and the answer is yes."

Dr. Lindberg, an expert witness for appellee here, testified that he thought that Cook simply fell asleep and that the theory of hyperventilation was ill-founded. He did not say that the pain described by Cook did not happen.

"No, I'm not saying he didn't have a pain in his neck."

Furthermore, he didn't contend that Cook did not pass out.

"Q. Doctor, if I understand you correctly, you said you're not saying that he didn't pass out?

DR. LINDBERG: No, I'm not saying anything about what happened when the patient was driving the car.

Q. Would that include wh... would it be fair to say that you're not saying that he did not suffer pain in his neck after or about the time of the accident?

A. I'm not saying 'cause I don't know."

In arriving at its decision, the board chose to believe Dr. Clarke, an expert witness for the appellees. He testified that he did not believe that the decedent had turned his head and had passed out from that physical act and that in his opinion there was no orthopedic relationship between the 1966 accident and Cook's death. However, Dr. Clarke did not say that the fainting episode was impossible or that Cook did not have a neck problem at the time of the accident. Instead, he confined himself exclusively to discrediting the "hyperventilation" theory which was only one of several possible explanations offered to account for the fainting. Although Dr. Clarke characterized the hyperventilation theory as "highly improbable," he later conceded that patients with neck spasm can, upon turning their heads, become dizzy or see spots. The net effect of the testimony of appellees' experts was to attempt to discredit the hyperventilation theory while not discussing other possible theories.

This review of the testimony of the two experts called by appellee makes it quite apparent that neither of them had any actual support for a conclusion that the crash could not have resulted from neck pain. Neither expert actually excluded neck pain as a possible factor. Nor had either of these experts personally examined Cook during his life. It was clearly error for the board to base a finding on such insubstantial evidence.

## WERE COOK'S DECLARATIONS CORROBORATED?

■ Additionally, the declarations of Cook to Dr. Rask concerning the cause of the accident were amply corroborated by other evidence. The matter of corroboration leads us to further consideration of AS 23.30.135(a) which provides in part:

"Declarations of a deceased employee concerning the injury in respect to which the investigation or inquiry is being made or the hearing conducted shall be received in evidence and are, if corroborated by other evidence, *suffi-*

*cient* to establish the injury." (Emphasis added.) [6]

Sufficient corroboration of Cook's declarations, to establish the neck pain as the cause of the injury, may be found in the testimony of Dr. Rask and Dr. Cavitt that Cook could have blacked out from pain in his neck. We conclude that the declarations of Cook were sufficiently corroborated to establish that the crash resulted from reaction to neck pain.[7]

## CAN DEATH BE ASCRIBED TO THE 1966 ACCIDENT?

Although we are convinced that the board's decision was not supported by substantial evidence and that Cook's declarations were corroborated by other evidence, we are still faced with a question which to date has not been directly answered in Alaska: whether under Alaska Workmen's Compensation Law a carrier must compensate for death sustained as a result of a nonindustrial accident caused by a physical defect or impairment which is work-related and compensable.

Other courts have had occasion to deal with this precise issue and their approach is helpful. In State Compensation Insurance Fund v. Industrial Accident Commission, 176 Cal.App.2d 10, 1 Cal.Rptr. 73 (1959), a carpenter recuperating from an industrial eye injury cut off a finger with a power saw. The accident was caused in part by defective vision brought on by the accident. In allowing compensation, the court said

> "The fact that a workman suffers a secondary consequence of the first injury should not work a mystic change in the nature of the applicable test." 1 Cal.Rptr., at 80.

The court concluded that an intervening cause must be the *sole* cause of the subsequent injury in order to be sufficiently detached from the original cause to cut off the right to compensation. This is probably the most extreme position adopted by any court in allowing compensation. In our opinion it is an unsatisfactory test for determining compensability.[8]

Other courts have allowed compensation for claims of this type without adopting the rule propounded by the California court.[9]

6. It is recognized that Cook's declarations tend to show that the crash and resulting death would not have occurred but for the neck pain he experienced.

7. The findings of the board on the subject of the effect of the neck pain are totally confusing. First the board concludes that if Cook fainted the cause is "unknown." Next the board concludes that the neck pain was caused by the 1959 accident and "aggravated" by the 1966 accident. It is difficult to ascertain just what "pain" the board is discussing, since the pain under consideration in its deliberations was supposedly the pain that caused the fainting.

8. See 1 Larson's Workmen's Compensation Law § 13.11, p. 192.65–66 for instances where this test yields very unsatisfactory results.

9. Kelly v. Federal Shipbuilding & Dry Dock Co., 1 N.J.Super. 245, 64 A.2d 92 (1949) (award to man who fell down church steps because of cast on leg while attempting to rescue child) ; Randolph v. E. I. DuPont De Nemours Co., 130 N.J.L. 353, 33 A.2d 301 (1943) (claimant wearing dark glasses because of compensable eye injury compensated for falling downstairs in own home at 11:00 at night) ; Unger & Mahon, Inc. v. Lidston, 177 Md. 265, 9 A.2d 604 (1939) (compensation for fractured hip sustained in fall attributable to compensably injured ankle); Hodgson v. Robins, 7 B.W.C.C. 232 (1914) Workmen's Compensation & Insurance Report 65 (compensation for fractured hip sustained in fall attributable to compensably injured knee) ; Continental Casualty Co. v. Industrial Comm'n, 75 Utah 220, 284 P. 313 (1930) (compensation for fractured hip sustained in fall attributable to compensably injured leg) ; Murray v. Interborough Rapid Transit, 253 App.Div. 848, 1 N.Y.S.2d 324 (1938) (fall downstairs occurring because claimant could not grasp the banister due to bandages on hand as a result of a compensable injury) ; Chiodo v. Newhall Co., 254 N.Y. 534, 173 N.E. 854 (N.Y.1930) (compensation for injury sustained because of slipping of crutches used because of prior compensable injury).

See 1 Larson's Workmen's Compensation Law § 13.11 et seq. for a compilation of

■ Although no precise test emerges from these cases,[10] it is both possible and desirable to locate a median between disallowing compensation and compensating all injuries which, by any thread of causation, may be connected with an earlier compensable injury. The test we adopt is this: if the earlier compensable injury is a substantial factor contributing to the later injury, then the later injury is compensable.

■ Applying this test, we find that the neck injury sustained by Cook in the 1966 accident played a substantial role in causing the automobile accident which took his life. Taking the record as a whole, in conjunction with the statements by Cook to his physician and the presumption in favor of allowing claims under the Workmen's Compensation Act, we hold that the board erroneously denied the claim.

The judgment of the Superior Court and the decision of the Workmen's Compensation Board are reversed. The case is remanded with directions to further remand to the board for the awarding of compensation to appellant because of her husband's death.

cases dealing with injuries sustained as a result of an initial compensable injury.

10. In dealing with this area of compensation law, 1 Larson's Workmen's Compensation Law, § 13 at 192.64, states the following:

"When we turn from * * * relatively simple cases of medical causal relation to the broad question of miscellaneous consequences having some causal connection with the original injury, we enter an area of compensation law where the difficulty of coherent principles is at the maximum."