[Civ. No. 2147. Fifth Dist., Mar. 26, 1974.]

JAMES N. FERREIRA, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD,
GEORGE FULLER COMPANY et al., Respondents.

## COUNSEL

Felix Alfred Aycock, Jr., for Petitioner.

Dawson, Gillaspy & Ninnis, Richard J. Yrulegui and William K. Gillaspy for Respondents.

## OPINION

**BROWN (G. A.), P. J.**—Petitioner, James N. Ferreira, seeks review and annulment of an order of the Workmen's Compensation Appeals Board ("appeals board") denying reconsideration of the decision and finding of the referee that a left inguinal hernia sustained on August 8, 1966, while lifting a battery out of his pickup truck at home is noncompensable.

In 1961 petitioner sustained a left inguinal hernia while working for Valley Motor Lines. There was a hernioplasty operation for this condition in 1961. By 1966, so far as petitioner was aware, this hernia was healed.

On May 18, 1966, while working as a truck driver for George A. Fuller Company, he sustained another left inguinal hernia. For a long period of time prior to May 18 his employment required him to lift 180 to 190 pounds many times each day.

Respondent Aetna Casualty and Surety Company ("Aetna") accepted liability, and surgery was performed by Raymond V. Wizbowski, M.D., on June 1, 1966. Dr. Wizbowski's first report stated, "While working, loading a truck sustained a recurrent hernia on the left. Prior hernia was repaired in 1958," and his diagnosis was "Left inguinal hernia, recurrent." Notations that were made on his chart during June by Dr. Wizbowski reveal that "wound appears to be healing nicely," and "no evidence of recurrent hernia," although there was still "some tenderness." On June 13, 1966, Dr. Wizbowski stated petitioner's condition at that time was "good" and that no permanent disability was anticipated. Petitioner was last seen by Dr. Wiz-

bowski on June 29, 1966, at which time he was released to return to work on July 18, 1966.

Feeling apprehensive about returning to work because he did not feel that the injury had fully healed, the petitioner remained at home. After remaining away from work for an additional two weeks, the petitioner began preparing to look for another job. On August 8, 1966, the petitioner attempted to change the battery in his pickup truck for the purpose of getting the truck to run. While in the process of changing the battery, he stood on a 12″ by 12″ wooden block, leaned over under the hood of the truck, and lifted the old battery, weighing some 37 to 40 pounds, from its position near the engine to the fender of the truck, a distance of a foot to a foot and a half. In doing so, the petitioner reinjured his left groin.

Aetna did not accept liability for this injury. An attempted repair by Dr. Wizbowski was unsuccessful and petitioner still suffers some disability from the occurrence.

On November 4, 1966, petitioner filed his application for workmen's compensation, which was not heard until July 20, 1973. On July 31, 1973, the referee filed his opinion, which held: "that the injury of May 18, 1966, caused temporary total disability through July 17, 1966; that all treatment to cure or relieve from the effects of the injury has been furnished and the injury caused no permanent disability." Reconsideration by the Workmen's Compensation Appeals Board was denied.

Evidence was received from three doctors describing the injury of August 8, 1966, and its relationship to the admitted industrial injury of May 18, 1966.

Dr. Wizbowski said he "strained & tore down a previous repair"; "caused a secondary recurrence to the original operative site"; a "slight recurrence"; and a "direct recurrence." Commenting on the petitioner's condition prior to the battery incident of August 8, 1966, Dr. Wizbowski indicated that the petitioner seemed to get along reasonably well during the post-operative period and that the repair "held without difficulty until the present episode."

Verne G. Ghormley, M.D., at the request of Aetna, examined petitioner and submitted reports dated January 13, 1967, October 20, 1967, and July 17, 1973. He described the petitioner as having a "recurrent left inguinal hernia after three surgical efforts to correct it," which was "approximately the size of a walnut," and which had appeared "through the same scar" as the previous injury. Dr. Ghormley gave the following conclusions: "In view of the fact that this recurrent left inguinal hernia developed as a result of his straining while lifting a sixty (60) pound battery at home, we feel that this condition is not industrial in origin, and treatment is not the

responsibility of the employer or the insurance company who is carrying his workmen's compensation insurance.

".     .     .     .     .     .     .     .     .     .     .     .     .     .     .     .     .     .

"The responsibility for the recurrent left inguinal hernia is, in our opinion, his own and not the responsibility of the employer or his workmen's compensation insurance carrier."

and further:

"The strain when he lifted the battery out of his truck was not an industrially related injury and we do not believe that the employer or the Aetna Insurance Company should be considered responsible for this condition."

Coleman Citret, M.D., examined petitioner at the request of his attorney in May of 1973. His diagnosis was: "Large recurrent left inguinal hernia." He noted that petitioner still had a very large left inguinal hernia which transmitted a strong impulse upon coughing or straining. He stated: "I do not believe it is possible at this time to assign any relative degrees of responsibility for the patient's present condition between the incidents of his 1961 injury, his 1966 work injury, his injury at home and the post operative complications resulting in the most recent recurrence. All of these events have contributed to his condition."

■ When a finding of the Workmen's Compensation Appeals Board is challenged, it must be upheld if supported by substantial evidence in light of the "entire record." (Lab. Code, § 5952; *LeVesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 637 [83 Cal.Rptr. 208, 463 P.2d 432]; *Aetna Cas. & Surety Co.* v. *Workmen's Comp. Appeals Bd.* (1973) 35 Cal.App.3d 329, 341 [110 Cal.Rptr. 780].) Whether there is substantial evidence to support the decision is a question of law.

■ Under the facts discussed above, it appears that the crucial determination is whether the hernia occasioned by the employment on May 18, 1966, contributed to the recurrent hernia initiated by the battery incident on August 8, 1966, or whether the latter hernia was so remote from and unconnected with the prior condition that it was not an incident of employment. (Lab. Code, § 3600, subd. (c).) ■ As stated in *Madin* v. *Industrial Acc. Com.* (1956) 46 Cal.2d 90, 92 [292 P.2d 892], " '. . . we look for a causal connection between the employment and the injury, such connection need not be the sole cause; it is sufficient if it is a contributory cause. . . .' " (See also *Wiseman* v. *Industrial Acc. Com.* (1956) 46 Cal. 2d 570, 573 [297 P.2d 649]; *Redmond* v. *Workmen's Comp. Appeals Bd.* (1973) 36 Cal.App.3d 302, 305-308 [111 Cal.Rptr. 530]; *Wickham* v. *North American Rockwell Corp.* (1970) 8 Cal.App.3d 467, 473 [87 Cal.

Rptr. 563]; *State Comp. Ins. Fund* v. *Ind. Acc. Com.* (1959) 176 Cal.App. 2d 10 [1 Cal.Rptr. 73].) Only if the " '. . . connection is so remote from the employment that it is not an incident of it' " can compensation be denied. (*Wiseman* v. *Industrial Acc. Com., supra,* 46 Cal.2d 570, 573.)

■ Finally, "Although the employee bears the burden of proving that his injury was sustained in the course of his employment, the established legislative policy is that the Workmen's Compensation Act must be liberally construed in the employee's favor (Lab. Code, § 3202), and all reasonable doubts as to whether an injury arose out of employment are to be resolved in favor of the employee." (*Garza* v. *Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 312, 317 [90 Cal.Rptr. 355, 475 P.2d 451].)

■ In the present case it was undisputed that the battery incident hernia was a "recurrent" hernia which arose in the identical spot as the prior hernia; all of the doctors described the August 8, 1966, injury as "recurrent." Furthermore, none of the doctors stated that the hernia of May 18, 1966, did not contribute to the subsequent hernia. Lexicographers define the word "recurrent" as: "1. Running back, or toward the source. 2. Returning after intermissions." (Dorland's Medical Dict. (23d ed.)) and "appearing or occurring again or periodically" (Webster's New World Dict. (2d College ed. 1970).) The conclusion is inescapable that the subsequent hernia was a reoccurrence of the prior injury to the identical area.

Respondents place sole reliance upon Dr. Ghormley's report, the conclusions from which are hereinabove quoted. That report in effect states that Aetna should not be held responsible for the injury of August 8, 1966, because it occurred as a result of straining while lifting a battery at home and therefore was not industrially related.[1]

However, these statements are clearly legal conclusions and not medical opinions and do not constitute substantial evidence. (*Hegglin* v. *Workmen's*

---

[1]The respondents assert that the import of Dr. Ghormley's report was that he concluded from a medical standpoint that the petitioner's condition was solely caused by the battery incident. They rely on that part of Dr. Ghormley's report which states: "The strain when he lifted the battery out of his truck was not an industrially related injury. . . ." However, this sentence continued: "and we do not believe that the employer or the Aetna Insurance Company should be considered responsible for this condition." Expert medical opinions such as this should not be read narrowly, taking only parts of sentences or single words (*Cullum* v. *Seifer* (1969) 1 Cal.App.3d 20, 26 [81 Cal.Rptr. 381] (disapproved on other grounds, *Scala* v. *Jerry Witt & Sons, Inc.* (1970) 3 Cal.3d 359, 370 [90 Cal.Rptr. 592, 475 P.2d 864])), rather, ". . . ' "the main object is not to draw fine distinctions based upon accurate definitions of words, but to ascertain the *real idea expressed*." ' . . ." (*Cullum* v. *Seifer, supra,* at p. 26, italics added; *Bauman* v. *San Francisco* (1940) 42 Cal.App.2d 144, 164 [108 P.2d 989].)

*Comp. App. Bd.* (1971) 4 Cal.3d 162, 169 [93 Cal.Rptr. 15, 480 P.2d 967].) The manner in which the law should apply to particular facts is a legal question and is not subject to expert opinion. (*L. A. Teachers Union v. L. A. City Bd. of Ed.* (1969) 71 Cal.2d 551, 556 [78 Cal.Rptr. 723, 455 P.2d 827].) ■ As was stated in *Hegglin* v. *Workmen's Comp. App. Bd., supra,* 4 Cal.3d 162, at page 169: ". . . not all expert medical opinion constitutes substantial evidence upon which the Board may rest its decision. Medical reports and opinions are not substantial evidence if they are known to be erroneous, or if they are based on facts no longer germane, on inadequate medical histories and examinations, *or on incorrect legal theories.*" (Italics added.) (See *Place* v. *Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 372, 378 [90 Cal.Rptr. 424, 475 P.2d 656]; *Zemke* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 794, 798 [69 Cal.Rptr. 88, 441 P.2d 928].) Furthermore, an expert's opinion is no better than the reasons upon which it is based. (*People* v. *Fonville* (1973) 35 Cal.App.3d 693, 705 [111 Cal.Rptr. 53]; *People* v. *Johnson* (1970) 5 Cal.App.3d 844, 847 [85 Cal.Rptr. 238].)

■ We have found no substantial evidence, and respondents have pointed to none, to support the appeals board's conclusion that the hernia injury of May 18, 1966, did not materially contribute to the recurrent hernia on August 8, 1966.

The order of the appeals boards is annulled and the cause is remanded to that board for further proceedings consistent with the views expressed herein.

Gargano, J., and Franson, J., concurred.