ERVIN, Judge,
concurring in part and dissenting in part.
The deputy’s order on review made three essential determinations: (1) that claimant’s fall at work on June 27,1983, causing injury to her knee, was compensable; (2) that the injury claimant suffered to her right elbow, resulting from the fall at home on December 1, 1985, was not related to her earlier compensable injury, and (3) that the claim for temporary total disability (TTD), and/or temporary partial disability (TPD), and/or wage-loss (WL) benefits from August 27, 1985, and continuing, should be denied, on the ground that any disability involving the condition of claimant’s knee was related solely to the progression of the preexisting degenerative arthritic condition of the knee and not to the compensable injury. I concur with the majority’s opinion in affirming the carrier’s cross-appeal, relating to the first determination, but I would reverse and remand for further proceedings as to the last two.
In his order finding that claimant’s 1985 fall was not caused by the earlier, compen-sable 1983 fall, but rather by the natural progression of claimant’s preexisting degenerative arthritis, the deputy stated: “Dr. Sullivan [the treating physician] reflected on page 29 of his deposition that the buckling of the right knee was related to her arthritic condition and not any injury she sustained as a result of the industrial accident.” The above portion of the order is both a misstatement of Dr. Sullivan’s testimony, as well as a conclusion that is not legally inferrable from his testimony. Dr. Sullivan actually stated that “[a]ny injury she sustained as a result of the 1983 fall should not have significantly affected any buckling she might have. I think the biggest determination of that is the extent of her arthritis.” (e.s.) Earlier in his deposition, in answer to the question as to the cause of the instability of claimant’s knee, Dr. Sullivan had responded, “Her chronic knee problem.” To the next question, “As aggravated by the accident in June of 1983?” he replied, “Yes, I suppose.”
Ignoring the inconsistency in Dr. Sullivan’s testimony as to causation and focusing solely upon Dr. Sullivan’s responses at page 29 of his deposition, as did the deputy, I still do not consider that the doctor’s testimony, stating that the earlier compen-sable injury had no significant effect upon the later buckling of claimant’s knee, meets the legal test of causation. The Florida Supreme Court in Sosenko v. American Airmotive Corp., 156 So.2d 489 (Fla.1963), specifically adopted Professor Larson’s “direct and natural result” test for subsequent injury or aggravation related in some way to the primary injury. As earlier stated by the court in Johnnie’s Produce Co. v. Benedict & Jordan, 120 So.2d 12, 13 (Fla.1960), “[T]he rule is that when the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment unless it is the result of an independent intervening cause attributable to claimant’s own negligence or misconduct.” (e.s.)
In application of the above rule, Professor Larson states that “even if the employment-weakened member does not actually cause the subsequent accident, it may render the results of that accident compensa-ble if the weakness made the limb more susceptible to refractare.” 1 A. Larson, The Law of Workmen’s Compensation § 13.12 at 3-388-89 (1984) (e.s.). In other words, as observed by a California appellate court, in determining whether a causal connection exists between the industrial injury and the later injury, the connection need not be the sole cause, it is sufficient if it is simply a contributing cause. Ferreira v. Workmen’s Compensation Ap *211 peals Board, 112 Cal.Rptr. 232, 38 Cal. App.3d 120 (1974).
In State, Department of Public Health v. Wilcox, 458 So.2d 1207, 1210 (Fla. 1st DCA 1984), we recognized that permanent compensation benefits and/or medical care may be awarded for claims following an intervening non-industrial accident if they are causally related to the compensation accident “in the absence of the second accident.” More recently we observed that the occurrence of a non-industrial accident does not “ ‘break the causal chain’ for all claims, but only those which would not have resulted if the later noncompensable accident had not occurred.” Newhouse v. Volusia County School Board, 474 So.2d 1222, 1224 (Fla. 1st DCA 1985) (e.s.). We acknowledged in Newhouse that the deputy was required, however, “to apportion and award any benefits still due independently from the industrial accidents.” Id. (footnote omitted).
Dr. Sullivan’s testimony that the claimant’s preexisting arthritic condition was the significant cause of claimant’s knee buckling does not meet Professor Larson’s direct and natural result test, as adopted in Florida. If the original compensable injury contributed or made the claimant’s knee more susceptible to reinjury, it is immaterial whether the compensable injury did not significantly affect the later buckling of claimant’s knee.
I would accordingly remand the cause to the deputy for clarification of whether the effects of the 1983 fall contributed to the injuries suffered from the 1985 fall, by making the knee more susceptible to instability, and I would permit the deputy the option of deciding the causation issue either upon the present record, or upon additional evidence. If the deputy finds that the earlier, industrial injury contributed to the injury suffered from the 1985 fall, the deputy should next decide whether apportionment is required, and, if so, he should apportion and deny only those benefits that are due independently from the non-industrial accident.
As to the deputy’s denial of the compensation claims following August 27, 1985, a different rule applies than is involved in the prior issue, in that the former involves the potential issue of reverse merger, not yet determined, whereas the latter issue focuses solely upon the asserted aggravation by the compensable accident of claimant’s preexisting arthritic condition to the knee and resulting disability, and suggests the existence of a forward merger, again never reached by the deputy, because he decided that the condition of the claimant’s knee, as of August 27, 1985, was solely related to the natural progression of her preexisting condition.
Once again, the deputy in my judgment has misapplied the law in regard to the facts at bar. Although Dr. Sullivan opined that at the time of the arthroscopic surgery performed on claimant following her 1983 fall, the employee did have extensive degenerative arthritis, Dr. Sullivan’s testimony clearly discloses that the preexisting, arthritic condition had been aggravated or made more symptomatic by the industrial accident. In another portion of his deposition, Dr. Sullivan said that approximately one-sixth of claimant’s impairment to the knee was attributable to the fall, while the remainder was due to her long-standing progressive, preexisting arthritic condition. There was no evidence from which the deputy could conclude, as he did, that the claims for temporary and WL benefits from August 27, 1985, and continuing, were solely related to the claimant’s preexisting, degenerative arthritic condition.
Since the claim in question does not involve one for permanent total disability benefits, the analysis used by the court in Escambia County Council on Aging v. Goldsmith, 500 So.2d 626 (Fla. 1st DCA 1986), is inapplicable to this case, pertaining to the three categories of cases involving aggravations of preexisting conditions by industrial injuries, and the circumstances under which apportionment may be applied. Apportionment cannot be employed in the instant case because of the statutory bar to apportionment of claims for temporary and WL benefits, as to disputes between a claimant and an employer/carrier. See Section 440.15(5)(a), Florida Statutes; Hayward Trucking, Inc. v. Aetna Insur *212 ance Co., 466 So.2d 437, 439 (Fla. 1st DCA 1985).
All that was necessary for the employee to prove that her preexisting condition was aggravated by the industrial injury was for her to show that the injury contributed to the aggravation of that condition. Cf. Dade Federal Savings & Loan Association v. Smith, 403 So.2d 995 (Fla. 1st DCA 1981) (claimant’s preexisting arthritic condition was aggravated by her industrial injury, resulting in a merger of the two, thereby resulting in a greater loss of wage-earning capacity). See also McGarity v. Merit Electric Co., Inc., 478 So.2d 1074 (Fla. 1st DCA 1985) (the deputy erred, in view of statutory bar, in apportioning temporary benefits and medical care, once it was shown that the industrial injury aggravated the preexisting condition).
I would therefore affirm as to the carrier’s cross-appeal, and, as to the claimant’s appeal, I would reverse and remand with directions, first, that further proceedings be conducted to determine whether apportionment of any resulting disability and/or medical costs relating to the second fall is appropriate, and, second, since the evidence clearly establishes that the compensable injury aggravated claimant’s preexisting, arthritic condition, that further proceedings be conducted to determine whether claimant has otherwise established her entitlement to temporary and/or WL benefits.