In the Matter of the Claim of VITTORIA SWANSON, Respondent, against WILLIAMS & Co., et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, June 29, 1951.

*Reid A. Curtis* and *A. R. Eberlein* for appellants.

*Nathaniel L. Goldstein, Attorney-General* (*Daniel Polansky* and *Roy Wiedersum* of counsel), for Workmen's Compensation Board, respondent.

*Edward Fontana* for claimant-respondent.

BERGAN, J. In 1946 the claimant's husband fell down an open elevator shaft in the course of his employment and suffered injuries of great magnitude. Over two years later a fracture of the hip had not fully healed and the employee, unable to place any weight on his left leg in walking, was required to use crutches.

While using them on September 22, 1948, he fell on the stairway in his own house and sustained a fracture of the skull and injuries to the brain from which he died the same day. On autopsy the brain tissue was referred for analysis as a matter of routine and was found to have a " 3-plus " content of alcohol. A pathologist defined this term in the record to mean a content of .32% to .4% of alcohol in the brain tissue.

There is undisputed evidence in the record that a person who has a " 3-plus " content of alcohol in the brain is intoxicated; that all such persons have " impaired judgment, muscular incoordination, disturbed equilibrium, dull senses, dizziness, staggering gait ".

The commonly observed inequality in the ability of one person compared with another to drink alcohol is due to a difference in capacity to absorb and eliminate the poison before it affects the brain, so the testimony runs; but when anyone, without regard to the breadth of his drinking experience, has achieved a " 3-plus " content of alcohol in the brain tissues, he is intoxicated.

There is other medical opinion in the record that there was association between the unhealed fracture and the need to use crutches, and hence between the original industrial accident and the fall which brought about death.

The board found that the accident in 1948 was " a consequence " of the 1946 accident and that the second accident was " causally related to and consequential upon " the first one; that the death of the employee was " the natural and unavoidable result " of the industrial accident. A further finding was made that the second accident was " not caused solely by intoxication ".

When these findings are taken in their totality it will be seen that intoxication is not ruled out of causation; it is held, merely, not to be a sole cause. The original accident has been found to be a contributing cause. We are of opinion that these views of the board have a substantial evidentiary foundation in the record.

It would not place undue strain upon any fact-finding process, either under the restrictions that applied to the verdicts of common-law juries or under the elastic freedom allowed in scope of evidential data to *quasi*-judicial bodies, to say that when a man with a fractured hip using crutches falls down a flight of stairs there is a connection between the physical condition and the fall.

Such a right upon such evidence would be allowed without hesitation to a jury. It falls within a sphere of common observation and judgment, and is not in its essential nature within the field of expert opinion, including medical opinion. The board could have found the connection between the two accidents without medical advice.

The board received, however, the view of one physician that there was such association between the second injury and the physical condition of the deceased; and while the pathologist testified that " 3-plus " alcohol content in the brain always means intoxication, he neither related the intoxication to the fall of the deceased nor eliminated the disability from the original industrial accident from a causal relationship.

In reaching the finding that intoxication was not the sole cause of the second injury the board could not rely on the presumption set up by subdivision 4 of section 21 of the Workmen's Compensation Law against intoxication as a cause of injury since that statutory presumption arises only when the injury is suffered " while on duty ". But if the board could find the previous injury and the need to use crutches were causally related to the accident it could necessarily eliminate intoxication as the " sole " cause.

In finding that the physical handicap of deceased was a cause, rather than intoxication the sole cause, in bringing about his fatal injury, the board could have accepted and considered the wife's testimony on her observation of the slow and steady gait of deceased as he approached his house on crutches on the day of his second injury, and her failure to observe the smell of alcohol on his breath after he had fallen and she went to his aid.

The central question, and there seems to be no reported case just like it, is whether an award will be·sustained on a record where the board could find that the previous industrial accident was a cause of the employee's death; but could not have found on the basis of substantial evidence that intoxication was not also a cause.

Appellants urged on the argument that to sustain an award, the original accident must be found to be the sole cause of the second injury. The brief, however, does not demonstrate such a rule; nor do the authorities seem to sustain it. Enough is shown when it can be found that the second accident is a direct consequence of the first one. Where this is shown the contributing intervention of other causes does not move the case out of the field of industrial accident. A case of conjunctive causation is regarded as compensable.

A good application of the general principle is to be found in *Matter of Murray v. Interborough R. T. Co.* (249 App. Div. 883). Claimant's hands were injured by frostbite. Three fingers on each hand were contracted and their power impaired and while his hands were bandaged in treatment for this injury he slipped and fell on a stairway. It was found that due to the limited use of his hands he was unable to hold on to the banister and that the original injury thus contributed to the fall. The court held that the original injury and the slipping on the stairway were both proximate causes and that the second accident was compensable.

If the influence of alcohol be taken out of consideration, the case bears a resemblance to *Matter of Chiodo v. Newhall Co.* (254 N. Y. 534). The facts appear in the Appellate Division record (228 App. Div. 740). The claimant had sustained an injury to his heel in an industrial accident. He testified that some months later while walking with a crutch he bumped his foot against the crutch causing a fall and further injury. It was argued that the accidents were not associated, and especially that it had not been shown that there was any need to use the crutch arising from the original accident, since the medical proof showed the original injury had healed at the time of the second fall to the extent no crutch was necessary and that hence the use of the crutch which caused the fall was claimant's own independent act and that he was negligent. The second accident, however, was held related to the first one and compensable.

A related, although not quite analogous, question was pointedly debated in this court in *Matter of Prentice* v. *Weeks* (239 App. Div. 227, affd. 264 N. Y. 507). There claimant injured his left knee. His right leg was uninjured. Fourteen months later while walking on his own lawn his right foot slipped due to an irregularity of the ground and he fell further injuring his left knee.

The strong dissent of Mr. Justice McNamee rested principally on the fact that it had not been shown that the first injury was a cause of the second one, i.e., it was the foot of the uninjured leg that slipped and the weakness of the left knee had not played a part in the cause itself. There was proof that the result of the fall on the lawn would not have been as severe were it not for the first injury; and the majority of the court were of opinion that the board could have found that " the condition " following the second accident " was attributable " to the first one. (Hill, P. J., p. 228.)

That decision, of course, carries the argument much farther than it is necessary to go here where it can be found, not merely that the consequences of the second accident were related to the first one, but, what is more important for the purposes of the statute, that the occurrence itself was related.

There can be such a clean break in the line of causation as completely to dissociate the accidents. In *Matter of Brown* v. *New York State Training School* (285 N. Y. 37) an injured employee, to relieve the pain of his injury, had taken poison which he mistakenly believed to be a sedative which had been prescribed. The presence of the poison in his house was not connected with the industrial injury.

His resulting death was held not compensable, but the court was careful to demonstrate that any possible relationship between making the mistake by which the poison was taken, such as a deranged mind or impaired eyesight and the original accident had been excluded (p. 41). Thus there remained intact " no chain of causation ".

Even though the record here makes admissible a finding that there was association of occurrence between the two accidents, still alcohol remains a stark factor in the second accident. But carelessness or error of judgment in the employee as components in the second accident have not yet been assigned an importance great enough to break a sufficiently established line of causation. (*Matter of Chiodo* v. *Newhall Co., supra.*)

Whatever may be said, one way or another, about drinking alcohol when a man is not working, we do not customarily attribute to the practice consequences of higher degree than carelessness or bad judgment. Alcohol is not presently treated by society as evil enough in itself to visit on the employee as a wrongdoer in drinking it every consequence of every event in which it plays any part. In this field, at least, alcohol is not required to assume the burden of all that happens if other sufficient causes also are found to exist.

The decision and award should be affirmed, with costs to the Workmen's Compensation Board.

FOSTER, P. J., HEFFERNAN, DEYO and COON, JJ., concur.

Decision and award affirmed, with costs to the Workmen's Compensation Board.