In the Matter of the Claim of FLORENCE DICKERSON, Respondent, against ESSEX COUNTY et al., Appellants, and LILLIAN FECH-HEIMER et al., Respondents. WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, November 16, 1956.

*John J. Clyne* and *J. Vanderbilt Straub* for appellants.

*Harlon G. Carson* for claimant-respondent.

*John Cullen* for Special Funds Committee, respondent.

*Hayward H. Plumadore* for Lillian Fechheimer, respondent.

*Thomas J. Burke* for Travelers Insurance Company, respondent.

*Jacob K. Javits, Attorney-General* (*Daniel Polansky* and *Roy Wiedersum* of counsel), for Workmen's Compensation Board, respondent.

HALPERN, J. On March 12, 1945, Elmer Dickerson, the decedent, slipped and fell on an icy pavement while working for the appellant Essex County. He sustained a fracture of the right femur, with accompanying injuries, resulting in a permanent condition described as " a right foot drop ". Dickerson used crutches for about two years and thereafter he wore a steel brace from time to time to help correct the foot drop. He was given a schedule award for a 70% permanent loss of the use of his right leg. The last payment of the weekly installments of this award was made on January 13, 1949.

In the meantime, on December 11, 1948, while Dickerson was walking about in his own yard, his right leg gave way and he fell and sustained a fracture of the same leg below the knee. He was no longer on crutches at that time and it is not certain whether he was wearing a brace but the disabled condition of his right leg unquestionably contributed to the happening of the accident. The right foot drop made him clumsy and subjected him to the constant risk of falling. It appears that he had fallen on numerous occasions, although he had fortunately avoided serious injury until the occasion of December 11.

As a result of the injury of December 11, Dickerson was again required to use crutches. But despite this fact, he resumed his work as a caretaker at the summer residence of the respondent Mrs. Fechheimer, within a few months after the accident. However, because of his injury, the duties assigned to him were of a supervisory character. On April 20, 1949, while so employed and while still on crutches, Dickerson fell down a flight of stairs and fractured his left leg and suffered other injuries. He died on April 26, 1949, from the injuries so sustained.

A claim for death benefits was filed against both Mrs. Fechheimer and Essex County. An award was made against the county on the ground that the accident of April 20, 1949, was a consequence of the injury originally sustained on March 12. 1945. Mrs. Fechheimer was discharged from liability, but no reason for this action was given in the board's decision or in its findings.

It is not clear from the evidence whether the decedent's fall on April 20, 1949, was caused by the slipping of one of his crutches or whether it was caused by his disabled right leg " giving out ". But, regardless of the precise manner in which the fall was caused, the board was amply justified in finding that the fall was a natural consequence of the original injury. If we assume that the disabled condition of the decedent's right leg, resulting from the first accident, contributed directly to the decedent's fall, then the first accident was obviously a proximate cause of the fatal accident. If, on the other hand, we

assume that the fatal accident was due wholly to the slipping of a crutch, the first accident was still one of the proximate causes of the fatal injury. The decedent was required to use the crutches because of the accident of December 11, 1948, but that accident was, in turn, a consequence of the injuries sustained in the first accident. The fatal injuries suffered while using crutches during the period of convalescence from the second accident must, therefore, be regarded as a natural consequence of the first accident. The circumstances of this case are unusual in that there were three successive falls, but there was an unbroken chain of causation which linked all three events. The situation is not unlike that of a death occurring in the course of surgery made necessary by a second or consequential accident (Larson on Workmen's Compensation, § 13.12; *Manley* v. *American Packing Co.*, 363 Mo. 744; *Beech Creek Coal Co.* v. *Cox*, 314 Ky. 743).

The appellant county argues that the activity undertaken by Dickerson constituted an intervening cause which broke the chain of legal causation, citing *Matter of Sullivan* v. *B & A Constr.* (307 N. Y. 161). But the *Sullivan* case turned upon the rashness of the claimant's conduct in undertaking to drive an automobile without auxiliary equipment, at an immoderate rate of speed, despite the fact that he knew that his knee was likely to lock and render him incapable of using the foot brake. In that situation, the court (p. 164) held that the " claimant's own temerity " was primarily responsible for the subsequent accident. In the present case, the decedent's conduct was not temerarious or rash. Getting about on crutches during the period of recovery is a natural and ordinary activity on the part of one who has suffered a leg fracture. In fact, such activity is an essential part of the recovery process.

It certainly cannot be said as a matter of law that the decedent's duties as a supervisory caretaker were so dangerous for a man on crutches that it was improper or unreasonable for the decedent to undertake them. At most, this presented a question of fact and all questions of fact have been resolved against the appellant by the board. Implicit in the board's findings is the conclusion that the decedent's activity was neither improper nor unreasonable and this conclusion is amply supported by the record.

The risk of a fall while using crutches, in a reasonable manner in the course of proper activities, is one of the normal or ordinary risks inherent in the situation created by the occurrence of a leg fracture. All the normal and ordinary risks incidental to the original injury are legally attributable to that injury

(Prosser on Torts [2d ed.], pp. 270–273). It is the settled rule in common-law cases that an injury sustained by the plaintiff, as the result of a fall while he was reasonably using crutches during the period of recovery from a leg fracture, is a proximate consequence of the original accident (*Wagner* v. *Mittendorf, 232 N. Y. 481*). The same view has been repeatedly taken in workmen's compensation cases. (*Matter of Chiodo* v. *Newhall Co., 254 N. Y. 534; Matter of Prentice* v. *Weeks, 239 App. Div. 227, affd. 264 N. Y. 507; Matter of Swanson* v. *Williams & Co., 278 App. Div. 477, affd. 304 N. Y. 624; Larson on Workmen's Compensation, § 13.12; Great A. & P. Tea Co.* v. *Hill, 201 Md. 630; Harnischfeger Corp.* v. *Industrial Commission, 253 Wis. 613.)*

The County of Essex raises an additional question as to the liability of the Fund for Reopened Cases under section 25-a of the Workmen's Compensation Law. The death claim was originally filed shortly after the decedent's death but the case was marked closed on September 28, 1950, pending the outcome of a third-party action which the claimant's then counsel indicated that he intended to bring against Mrs. Fechheimer. This action was subsequently abandoned and an application to reopen the death claim was filed on June 20, 1952. This was more than seven years after the occurrence of the original injury of March 12, 1945, and the appellant Essex County therefore argues that the liability should be imposed upon the Fund for Reopened Cases, under section 25-a (subd. 1, par. [2]). First of all, it may be questioned whether the case was ever closed within the meaning of section 25-a and whether a reopening of the case was necessary in 1952 but, even if it is assumed that the application in 1952 is to be treated as an application to reopen within the meaning of section 25-a, the liability of the Special Fund did not attach because less than seven years had elapsed from the date of the death, which occurred on April 26, 1949, to the date of the application to reopen. The seven-year period under section 25-a (subd. 1, par. [2]) as applied to a death case, is to be measured from the date of death and not from the date of injury (*Matter of Burcia* v. *St. Joseph Lead Co., 283 App. Div. 1124*). Paragraph (3) of subdivision 1 of section 25-a is obviously inapplicable because seven years had not elapsed between the date of the injury and the date of the death and three years had not elapsed between the date of the last payment of compensation and the date of the death. The award of death benefits against Essex County was therefore proper.

However, we can find no reason in the present record for the board's failure to hold Mrs. Fechheimer liable along with the

County of Essex. The board found that the fatal accident occurred while the decedent was " engaged in the regular course of his employment and while working for his employer, Lillian Fechheimer ". It appears that there were four employees engaged in work at the time on Mrs. Fechheimer's summer estate and she was therefore subject to the Workmen's Compensation Law (§ 3, subd. 1, groups 2, 18). Even though the decedent's slipping on the stairs was due to an earlier injury sustained in the employ of a former employer, the employer in whose employ the consequential accident occurred may be held liable under the Workmen's Compensation Law, along with the former employer. Even if the fall were treated as an idiopathic one from the standpoint of the current employer, the conditions of employment obviously contributed to the hazards of the fall and the employer could therefore be held liable for compensation (*Matter of Connelly* v. *Samaritan Hosp.*, 259 N. Y. 137). The apportionment of the liability between the two employers is for the board to determine (*Matter of Anderson* v. *Babcock & Wilcox Co.*, 256 N. Y. 146).

The decision and award should be accordingly reversed and the case remitted to the Workmen's Compensation Board for further proceedings, without costs.

FOSTER, P. J., BERGAN, ZELLER and GIBSON, JJ., concur.

Decision and award reversed, without costs, and matter remitted to the Workmen's Compensation Board for further proceedings.