[Civ. No. 52107. Second Dist., Div. Three. Apr. 26, 1978.]

IRA G. BEATY, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and
CITY OF LOS ANGELES, Respondents.

**COUNSEL**

Lewis & Marenstein and Richard T. Unitan for Petitioner.

Burt Pines, City Attorney, H. John Wittorff, Assistant City Attorney, and William G. Lorenzetti and Stanton Jay Diamond, Deputy City Attorneys, for Respondents.

**OPINION**

**COBEY, Acting P. J.**—Petitioner, Ira G. Beaty, contends that an off-the-job accident is industrially related since it was the proximate result of a prior industrial injury. The appeals board held against Beaty. We annul the appeals board's decision as the issues involved need further consideration by the appeals board in light of our opinion herein.

## FACTS

Beaty while employed by the City of Los Angeles (City) as a police officer on August 13, 1972, sustained injury arising out of and occurring in the course of his employment to his left minor upper extremity.[1] In June 1974, Beaty was awarded 5¾ percent permanent disability for the Industrial Injury.[2] Beaty asserts that the injury he sustained in a fall from a ladder on April 19, 1975, while engaged in nonjob-related activities is compensable on an industrial basis because the residuals of the Industrial Injury were a contributing factor to the fall.

As a result of the Industrial Injury, Beaty underwent several left shoulder surgeries. The last of those was in September 1973. Thereafter Beaty did return to work for City but continued to have problems with his shoulder which included pain ranging from a constant dull ache to a sharp pain. Beaty found that if he rotated his shoulder in a particular manner it would produce a sharp pain. Nevertheless, Beaty in the spring of 1974 found his shoulder was well enough for him to go water skiing.

In November 1974, Beaty went to see Joseph T. Culverwell, M.D. because of shoulder discomfort and because of his concern about "catching and grinding" in the shoulder; Dr. Culverwell placed Beaty on medication for about two weeks.

Beaty then went to see Alonzo J. Neufeld, M.D. beginning in February 1975. Dr. Neufeld, in his report of March 4, 1975, described Beaty's shoulder problem as follows: "This is a condition which can be compared to osteoarthritic changes and is usually the result of either aging or repeated trauma. It is, however, a condition which under proper exercise can be brought up to a reasonable level of proficiency and kept at that level if the exercise program is continued. Overstress, however, will produce a return of the pain and [an] increase in disability, I would advise that his activities be kept within his capacity. I have talked over . . . [an] exercise program with him and we have agreed on the idea of doing his exercise within those ranges of motion of the shoulder which are not

[1]Hereinafter, for purposes of clarity, the industrial injury of August 13, 1972 will be referred to as the Industrial Injury.

[2]Beaty had sustained an earlier compensable industrial injury in 1970 to his left shoulder while employed by City; the consequences of this injury are apparently not involved in this proceeding.

painful at this time.[3] I think that this will enable him to toughen up the shoulder joint to the point where he should be able to perform satisfactorily."

According to Beaty, no physician placed any specific restrictions on him because of the shoulder. Rather Beaty claims all he was told was to do only what he thought he was capable of doing and to discontinue activities that caused discomfort.

As previously noted, Beaty's fall from the ladder occurred on April 19, 1975, when he was helping his father in the construction of a swimming pool.[4] Beaty was on a ladder, working with a piece of conduit. He was using a crowbar with his left arm to pry a piece of conduit out of a wall. Beaty's arm was at shoulder level. This activity lasted for about 30 seconds. According to Beaty, the rotating movement of his left shoulder caused a very severe pain in his left shoulder and in spontaneous unthinking reaction to the pain Beaty made a move to his left shoulder with his right hand. As a result thereof, according to Beaty, he lost his balance and fell into the swimming pool excavation. He was thereby injured.

Beaty thereafter petitioned to reopen the award regarding the Industrial Injury claiming the Subsequent Accident was a proximate result thereof.

Beaty obtained a medical evaluation from Paul Leonard, M.D. In his report of October 13, 1975, Dr. Leonard connected the Subsequent Accident to the disability stemming from the Industrial Injury: "This man suffered an exacerbation of shoulder problems. The shoulder was in a weakened status from prior industrial trauma, although it had substantially been functioning fairly well. Sudden severe pain in the left shoulder while doing non-industrially related activities occurred because of the weakened shoulder and would probably not have occurred with a 'normal' or not previously injured musculoskeletal structure. The pain caused him to fall, suffering injury to the flank and back. . . ."

Dr. Culverwell, one of the aforementioned treating physicians, opined Beaty now had a rotator cuff tear of the left shoulder but took a different

---

[3]Dr. Neufeld in his report of February 27, 1975, similarly stated: "He is to avoid movements which causes pain and snapping. Exercise within limits of tolerance."

[4]Hereinafter, for purposes of clarity the accident of April 19, 1975, will be referred to as the Subsequent Accident.

position from that of Dr. Leonard as to the connection between the Subsequent Accident and Industrial Injury. Dr. Culverwell stated in his report of February 18, 1976: "I . . . must conclude that his fall from the scaffold was the etiology of his new [rotator cuff] tear. In your request you asked me to comment on [Dr. Paul Leonard's] discussion as to his conclusions. It is difficult to establish the relationship between a weakened shoulder and this new injury, and as Dr. Leonard points out the shoulder had substantially been functioning fairly well from the accident of 1972. I do not believe I could put a cause and [effect] relationship between [Mr. Beaty's] shoulder *'weakness'* and his current accident as this is too difficult to establish on a cause and [effect] basis. I fully realize that Mr. Beaty is attempting to establish that kind of cause and [effect] relationship in order to reopen his case. *I had no reason to believe that the strength of the arm was that diminished to allow [Mr. Beaty] to fall,* but can only comment that the present injury was not noted in the previous arthrogram." (Italics added.)

The workers' compensation judge held that the Subsequent Accident was unrelated to the disability from the Industrial Injury. The judge felt that the fall was not an "exacerbation" as characterized by Dr. Leonard. The judge noted Dr. Culverwell believed that "the strength of [Beaty's] arm was not so diminished to establish a cause and effect relationship between his arm weakness and the specific injury."

The board denied Beaty's petition for reconsideration in a two-to-one panel decision. The dissenting commissioner felt that Beaty should have been referred to an independent medical examiner to clarify the questions involved.

DISCUSSION

■ To establish the City's liability the Industrial Injury need not be the exclusive cause of the Subsequent Accident but only a contributing factor to it. So long as the Industrial Injury was a contributing factor to the Subsequent Accident, liability is established on an industrial basis. (*State Comp. Ins. Fund* v. *Ind. Acc. Com. (Wallin)* 176 Cal.App.2d 10, 17 [1 Cal.Rptr. 73]; see also *McGlinn* v. *Workers' Comp. Appeals Bd.* (1977) 68 Cal.App.3d 527, 534 [137 Cal.Rptr. 326]; 2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d rev. ed. 1977) § 8.03 [6] [h]; 1 Herlick, Cal. Workers' Compensation Law Handbook (2d ed. 1978) § 10.31.)

In *Wallin,* the injured sustained an industrial injury to his left eye. While still suffering from the aftereffects of the industrial injury, the injured amputated one of his fingers while using an electric saw. The finger injury was proximately caused by the eye injury. The appellate court held proximate causation in compensation cases requires only that the industrial injury be a contributing factor to the subsequent accident and that therefore the finger injury was compensable on an industrial basis.

■ Mere carelessness or contributory negligence of the injured does not break the causative connection unless such intervening carelessness or negligence is the sole and exclusive cause of the injury. (*Wallin, supra,* 176 Cal.App.2d at p. 17.) Certain conduct can break the causative chain. Where the injured rashly undertakes a line of action with knowledge of the risk created by the weakened member resulting from the industrial injury, the causative chain from the industrial injury is broken as to the subsequent accident caused by such conduct. (Larson, Workmen's Compensation Law (1978) § 13.12; see also Larson, *Range of Compensable Consequences in Workmen's Compensation* (1970) 21 Hastings L.J. 609.)

*Wallin,* it must be remembered, dealt with a subsequent accident allegedly caused in part by the injured's "negligence." There is no indication in *Wallin,* though, whether the commission considered if Wallin, the injured person, had rashly undertaken the activity which resulted in the loss of his finger. True, he had been ordered to exercise his eye by the treating physician. (*Wallin, supra,* 176 Cal.App.2d at p. 16; see also 1 Herlick, *supra,* § 10.31.)

In *Wallin* the court relied upon a number of out-of-state cases concerning the chain of causation between an industrial injury and a subsequent off-the-job accident in coming to its conclusion: *Swanson v. Williams & Co.* (1951) 278 App.Div. 477 [106 N.Y.S.2d 61]; *Cresci v. Mike Krasilousky Trucking Co.* (1958) 5 App.Div.2d 569 [172 N.Y.S.2d 322]; *Dickerson v. Essex County* (1956) 2 App.Div.2d 516 [157 N.Y.S.2d 94]; *Randolph v. E. I. DuPont De Nemours & Co.* (1943) 130 N.J.L. 353 [33 A.2d 301]; and *Hartman v. Federal Shipbuilding & Dry Dock Co.* (1951) 11 N.J.Super. 611 [78 A.2d 846]. When compared, these cases highlight the distinction between mere carelessness, which does not break the causative chain, and rashly undertaking a course of conduct with knowledge of the risks involved in the activity in light of the condition stemming from the industrial injury, which does break the causative

chain. We do not read *Wallin* as explicitly or impliedly rejecting this important distinction even though Larson appears to view *Wallin* to the contrary. (See *Larson, supra,* § 13.11.)

■ Accordingly, in determining whether the Subsequent Accident is compensable and the liability of City, there are two inquiries to be made. First, it must be determined if the aftereffects of the disability from the Industrial Injury were a contributing factor to the Subsequent Accident. Secondly, if the Industrial Injury was a contributing factor, did the Subsequent Accident occur as a result of "rashly" undertaking activity with knowledge of the risk created in light of the disability from the Industrial Injury.

The workers' compensation judge concluded that the Industrial Injury was not a contributing factor to the Subsequent Accident. ■ On review our function is to determine whether the judge's finding is supported by substantial evidence, in light of the entire record. (*Le Vesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 637 [83 Cal.Rptr. 208, 463 P.2d 432]; see also, *Lamb* v. *Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d 274 [113 Cal.Rptr. 162, 520 P.2d 978]; *Garza* v. *Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 312, 317 [90 Cal.Rptr. 355, 475 P.2d 451].)

■ Whether the Industrial Injury was a contributing factor to the Subsequent Accident involves a mixed legal and medical question. In analyzing the *probabilities* of whether the aftereffects of the Industrial Injury were the cause of the pain which Beaty alleges resulted in his falling off the ladder, a medical question is involved. On the other hand, whether Beaty did experience such pain and whether the pain actually caused Beaty to fall are matters for the trier of fact, the trial judge, to determine.

There is also a question as to the etiology of the rotator cuff tear. The cause may have been the impact of the fall itself. Another possibility is that the shoulder pain which preceded the fall actually stemmed from the rotator cuff tear which in turn was caused by Beaty's shoulder activities at that time. That is, the rotator cuff tear may have preceded the fall. If the rotator cuff tear so caused the fall, the inquiry is whether the Industrial Injury contributed to the occurrence of the rotator cuff tear or whether the shoulder activities while working on the ladder caused the tear independently of the aftereffects of the Industrial Injury. In the latter case, the Subsequent Accident would clearly not be the liability of the City. Such an inquiry involves medical questions.

■ As with the mixed legal/medical question of apportionment, the medical expert can properly express his expert opinion regarding the medical probabilities of the Subsequent Accident having occurred as contended by the injured. (See *Zemke* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 794, 798-799 [69 Cal.Rptr. 88, 441 P.2d 928].) If the medical expert does so, though, he must disclose the underlying basis for his opinion. (*Ibid.*) The medical expert must disclose this underlying basis in order that the judge can determine whether the expert's opinion constitutes competent evidence upon which the judge can rely in coming to his decision. (*Ibid.*; see also *Hegglin* v. *Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 162, 169 [93 Cal.Rptr. 15, 480 P.2d 967]; *Place* v. *Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 372, 378 [90 Cal.Rptr. 424, 475 P.2d 656]; *Smith* v. *Workmen's Comp. App. Bd.* (1969) 71 Cal.2d 588, 592 [78 Cal.Rptr. 718, 455 P.2d 822].)

■ Here, the trial judge relied upon Dr. Culverwell's evaluation. Dr. Culverwell opines that he could not put a cause and effect relationship between Beaty's shoulder "weakness" from the Industrial Injury and the Subsequent Accident. Dr. Culverwell does not identify, however, what he meant by "weakness." It is unclear if "weakness" in Dr. Culverwell's mind included reference to Beaty's claim of the Subsequent Accident resulting from a sudden pain in the injured shoulder. Dr. Culverwell fails to discuss in precise terms his opinion as to the medical probability of the Subsequent Accident having occurred as Beaty alleges.

Dr. Culverwell's opinion is also wanting on the questions of whether the rotator cuff tear occurred before the fall and whether it was the tear that in turn caused the shoulder pain. In such situation the issue is whether the aftereffects of the Industrial Injury contributed to the occurrence of the rotator cuff tear. All Dr. Culverwell managed to state in his report was that "the fall from the scaffold was the etiology of his new [rotator cuff] tear." This statement is ambiguous as to whether the impact of the fall caused the tear or whether by "fall" Dr. Culverwell refers to the entire episode starting with Beaty's shoulder activities before the sudden pain occurred.

Since Dr. Culverwell's opinion in these respects is ambiguous, we conclude that it does not constitute substantial evidence in support of the judge's decision.

We wish to emphasize, however, that this court is not indicating at this time whether the Subsequent Accident should be held compensable.

## Disposition

The award and the board's order denying reconsideration are annulled. The matter is remanded to the board for further proceedings (including the opportunity for the parties to submit further evidence) consistent with this opinion.

Allport, J., and Potter, J., concurred.