**JOSEPH E. SEAGRAM & SONS, INC.,**
**Appellant (Defendant Below),**

v.

**Kathleen L. WILLIS, Appellee**
**(Plaintiff Below).**

**No. 2–1078A353.**

Court of Appeals of Indiana,
Third District.

March 12, 1980.

Edward K. Halaby, Kimpel, Halaby, Hyland & Weinkam, Cincinnati, Ohio, Edwin J. Bunny, Indianapolis, for appellant.

Howard S. Young, Young & Young, Indianapolis, for appellee.

HOFFMAN, Judge.

This is an appeal from an action brought before the Industrial Board of Indiana (Board) by claimant-appellee Kathleen Willis against defendant-appellant Joseph E. Seagram & Sons, Inc. (employer) to recover workmen's compensation benefits on account of the death of her husband, an employee of Seagram's. The Hearing Member found in favor of the claimant and the Board affirmed. The salient parts of the Board's award are as follows:

"Said Hearing Member having reviewed the file and being duly advised in the premises, now finds that on or about May 30, 1972, the plaintiff was employed by the defendant; that on said date, the plaintiff while working for the defendant and within the plaintiff's scope of duties, the plaintiff did fall, resulting in injuries to his head and face.

"It is further found that the defendant immediately received notice of said injuries and accident and provided plaintiff with medical and hospital services and sending him to Dearborn County Hospi-

tal, Mount George Hospital and General Hospital and, further, in providing him with the care of Dr. Miller.

"It is further found that plaintiff continued to be treated by Dr. Miller, a duly qualified orthoped surgeon, who released plaintiff to return to light duty work on October 16, 1972; that plaintiff never returned to work but continued to endure severe headaches; that, pursuant to such pain, the plaintiff sought the services of a neurologist—namely, Dr. Elam; that the plaintiff did not request, nor did the defendant know that plaintiff had sought Dr. Elam's services; that plaintiff saw Dr. Elam on two occasions, November 2, 1972 and December 12, 1972.

"It is further found that the physician, Dr. Miller, by his own admission, did not attend to nor was he qualified to attend to the headaches of the plaintiff; that Dr. Miller admits that a neurologist is best qualified to treat trauma induced headaches.

"It is further found that the plaintiff had good reason to seek medical care of his own choosing, in that he was still suffering from headaches caused by the accident and that the medical care tendered by defendant did not include treatment for his headaches.

"It is further found that the said Dr. Miller [sic] prescribed Valium and Librium for the decedent in order to reduce the pain of the headaches.

"It is further found that the decedent died on December 31, 1972, as a direct result of taking the above described prescriptions, along with ingesting alcohol, the combined effect of which led to drug poisoning causing death.

"It is further found that there were no proven burial expenses.

"It is further found that at the time of plaintiff's decedent's death, he left surviving him as his sole and only heir, his wife, who was residing with him and was wholly dependent upon him at the time of his said accidental injury and death.

"It is further found that defendant shall pay the medical expenses of Dr. Miller.

"It is further found that prior to the filing of said claim there was a good faith effort between the parties to adjust said claim, which effort resulted in a dispute between the parties.

"Said Hearing Member now finds for the plaintiff and against defendant on plaintiff's Form 10 application filed April 1[3], 1974."

The error assigned by the employer is that the award was contrary to law. This assignment of error presents for review both the sufficiency of the findings of fact utilized to sustain the award and the sufficiency of the evidence to support the findings of fact. *Penn-Dixie Steel Corp. v. Savage* (1979), Ind.App., 390 N.E.2d 203. In its cross-appeal the claimant maintains the Board erred in overruling her motion to add interest on the award from the date of the decedent's death.

Basically the employer's position is that the necessary causal connection between the decedent's industrial accident and his death was not established by claimant. It is urged that the decedent's death was not a natural consequence of his industrial accident insofar as intoxication was an independent intervening agency which broke the chain of causation.[1]

"It seems to be well settled that a subsequent incident or accident which results in a new, different or additional injury is compensable if it is of such nature and occurs under such circumstances that it can be considered as the proximate and natural result of the original injury. . . . Although not concerned with a second or subsequent accident this court said in *United Paperboard Co. v. Lewis,* 1917, 65 Ind.App. 356, 117 N.E. 276, 278: 'It is well settled that where the primary injury arises out of the employment, every consequence which flows from it likewise arises out of the employment.' The same principle is announced in *Goshen Veneer*

---

1.  It should be observed that the burden of proving that the injury or death was due to intoxication rests with the employer. IC 1971, 22–3–2–8 (Burns Code Ed.).

*Co. v. Cozzi*, 1931, 93 Ind.App. 160, 176 N.E. 634, and cases cited. [Citations omitted]

"On the other hand the subsequent incident or accident may be such as to constitute an independent intervening agency which breaks the chain of causation between the two injuries and relieves the employer of responsibility for the latter. . . . And this is true even though the first injury may have contributed to the second accident to some extent. . . As was said in *Marshall v. City of Pittsburgh, supra*, [119 Pa.Super. 189, 180 A. 733, 735]: 'Cases may arise where the elements of time and space and intervening causes may be so involved that the second injury could not be said to be the proximate, natural, and probable result of the original accident, or the second accident may [be] so predominate that it overshadows the original cause.' Lack of ordinary care on the part of the claimant which proximately results in the second accident has been held to constitute an independent intervening agency which breaks the chain of causation between the two injuries and thus bars recovery for the second. . . . [Citations omitted] "Whether the second accident, in the case before us, was the proximate and natural result of the original injury or whether it was the proximate result of the appellant's negligence and therefore should be regarded as an independent intervening cause, was a question of fact for the Industrial Board, to be decided in view of all the circumstances, and its findings in that regard must be sustained, even though the evidence is undisputed, if there is any legitimate theory applicable to the facts on which the award can be upheld. The appellant, knowing full well that his right knee was weak and unexpectedly gave way on occasions, causing him to fall, elected to carry a bundle of trash, which occupied both his hands, down a basement stairway. Whether this was the act of an ordinarily prudent and careful man under all the circumstances rested exclusively with the Industrial Board to determine. The board conclud-

ed that it was not and we cannot say, as a matter of law, that such conclusion is wrong.

"But even so the appellant contends that negligence on the part of the claimant is not a defense in workmen's compensation cases. That is true as far as the primary injury is concerned but the employer's liability for a second injury depends upon an unbroken chain of causation between it and such primary injury and the chain is broken when any independent agency, including the claimant's negligence, intervenes and becomes the proximate cause of the second accident."

*Yarbrough v. Polar Ice & Fuel Co.* (1948), 118 Ind.App. 321, at 324–326, 79 N.E.2d 422, at 423–424.

■■ Thus, certain conduct on the part of the decedent such as negligence or intoxication may constitute an intervening cause of the subsequent injury thereby relieving the employer of liability. Where the injured rashly undertakes a line of action with knowledge of the risks involved in the activity in light of the condition stemming from the industrial injury, the causative chain from the industrial injury is broken as to the subsequent accident caused by such conduct. *Beaty v. Workers' Comp. App. Bd.* (1978), 80 Cal.App.3d 397, 144 Cal.Rptr. 78; 1 Larson, *Workmen's Compensation Law* (1978) § 13.12. However, a distinction must be drawn between such conduct and mere carelessness or errors of judgment which do not break the causative chain. *Beaty v. Workers' Comp. App. Bd., supra; Swanson v. Williams & Co.* (1951) 278 App. Div. 477, 106 N.Y.S.2d 61.

Both *Yarbrough* and *Crosby v. Grandview Nursing Home* (1972) Me., 290 A.2d 375, highlight this distinction between engaging in a course of conduct with knowledge of the attendant risks created by the industrial injury and mere carelessness. In *Yarbrough* the Board denied compensation benefits on the basis that the actions of the claimant in carrying trash down a flight of stairs knowing full well that his knee was weak and gave way unexpectedly was not the act of an ordinary and prudent man

under the circumstances. On appeal the Board's award was affirmed.

In *Crosby v. Grandview Nursing Home, supra,* the claimant injured her foot in an industrial accident and was required to wear a cast. The employer accordingly compensated her for this mishap. Subsequently she began suffering acute foot strain. Her physician advised her to obtain some decent supportive shoes but did not furnish her with specific instructions regarding footwear. The foot strain worsened. The employer argued that the aggravation of her original injury was due to inadequate footwear rather than immobilization of the leg muscles due to the wearing of the cast. The court, in reversing the award in favor of the employer, held:

> "Absent a direct instruction not to wear the space shoes which she had bought at the suggestion of the doctor and to get herself another specific type of shoe as he now believes should be prescribed to relieve her disability, Mrs. Crosby who knew that the shoes she was wearing had arch supports cannot be charged either with negligent conduct or intentional misconduct as a matter of law. The Commissioner misconstrued the facts and his error is one of law which this Court must correct."

290 A.2d at 383.

▮ Viewed in the perspective of the legal principles articulated above it cannot be said that the Board's award was contrary to law. It is the province of the Board to hear and weigh the evidence, determine the evidentiary facts and from such facts draw reasonable inferences to arrive at the ultimate fact. The finding of the ultimate fact becomes a question of law for the determination of the reviewing court only where there is no conflict in the evidence and where there can be only one reasonable inference drawn from the evi-

dentiary facts established by the uncontradicted evidence. *Calhoun v. Hillenbrand Industries, Inc.* (1978), Ind., 381 N.E.2d 1242. Accordingly, whether the decedent's death was the proximate and natural result of his industrial injury or whether it was the proximate result of his negligence in drinking while under sedation and hence should be considered as an independent intervening agency was a question of fact for the Board to resolve.

Certainly the decedent's conduct evinced bad judgment or carelessness but the evidence does not lead irresistibly to the conclusion that he was negligent. There was medical testimony that the decedent suffered from post-traumatic headaches. Post-traumatic was defined as an emotional reaction to a rather severe injury. Dr. Elam testified that these headaches resulted from the decedent's reaction to his original injury. To alleviate the depression and tension that the decedent was suffering from, Dr. Elam prescribed ordinary doses of Librium and Valium. He could not recall whether he warned the decedent not to drink while taking the tranquilizers but stated that he usually made such an admonition. He also testified that he "probably" advised the decedent not to mix the sedatives with alcohol.[2]

Based on an ethyl alcohol level of 0.25% found in the blood, the coroner testified that the decedent could not have died from the alcohol consumption alone. In fact the coroner's testimony indicated that it would take a blood alcohol level of 0.45% or higher to attribute a death solely to alcohol. He further testified that he found Librium in the decedent's blood within the therapeutic range, that is, the level of a drug that you would expect to find when a drug is given according to prescription. There was also a very low level of Valium in the blood but it was far down in the therapeutic range.

---

2. Apparently the Board disbelieved Dr. Elam's testimony regarding admonitions to the decedent. Although the Board may not arbitrarily reject items of oral evidence, where a particular item of evidence is not expressly or directly contradicted, the Board may nevertheless consider all other evidence, including circumstanc-

es that might in any way affect the weight or credibility of such evidence, and the Board may disregard the oral evidence if it is considered unreasonable or inconsistent with circumstances shown by other evidence. *Wilson v. Ind. Gas & Water Co.* (1955), 126 Ind.App. 302, 130 N.E.2d 498.

The coroner stated that both Valium and Librium were commonly used drugs. No other traces of drugs were revealed by the drug screen. In the coroner's opinion the decedent died due to the combined effect of alcohol, Valium and Librium.

From these facts the Board reasonably concluded that the decedent's conduct was nothing more than mere carelessness[3] since an inference could be drawn that the decedent was unaware that his actions, in light of his condition stemming from the original injury, posed a risk of injury or death. Furthermore, it quite properly found that the industrial injury was a proximate cause of death in that the injury need not be the sole cause of death but only a contributing or concurring cause. *See: Victor Oolitic Stone Co. v. Crider* (1939), 106 Ind.App. 461, 19 N.E.2d 478; *Noble Co. Highway Dept. v. Sorgenfrei* (1975), 163 Ind.App. 81, 321 N.E.2d 766; *Wilson v. Emery Bird Thayer Company* (1966) Mo.App., 403 S.W.2d 953. *Cf.: City of Lakeland v. Burton* (1941) 147 Fla. 412, 2 So.2d 731 (death of employee suffering accidental injury causing great pain was compensable even if death was the immediate result of taking narcotic prescribed by physician to relieve such pain since ingestion of narcotic was not an independent intervening cause but rather was the result of the original injury).

Next it is argued that the employer should not be responsible for the acts of the decedent's private physician, Dr. Elam, since it did not authorize his treatment and was otherwise furnishing adequate medical care to the decedent. The employer asserts there was insufficient evidence to support the findings that Dr. Miller, the company physician, was not qualified to attend to the post-traumatic headaches of the decedent or that the employer's medical care did not include treatment for them.

When the claimant's conduct in seeking private treatment and his choice of doctor are found reasonable under the circumstances, any added disability or death resulting from the private treatment is compensable. 1 Larson, *Law of Workman's Compensation*, § 13.23. On the issue of whether or not it was reasonable for the decedent to seek private treatment, such a question is one of fact for the Board to determine. Having reviewed the entire record the findings cannot be disturbed since the evidence and all reasonable inferences deducible therefrom are not of such conclusive nature as to force a conclusion contrary to that reached by the Board. As noted in *Hess v. Ohlen Bishop Co.* (1932), 96 Ind.App. 142, at 144–145, 183 N.E. 487, at 488:

> "Although the finding in this case may appear to be manifestly against the weight of the evidence, the law of this state precludes this court from setting aside said finding where there is any competent evidence to support same. If the contrary were true it would amount to a weighing of the evidence, and we have consistently held that we cannot do this."

*See also: Noble Co. Highway Dept. v. Sorgenfrei, supra.*

The employer also attacks the finding that the decedent sustained injuries to his head and face. It submits that this finding is misleading because the term "head injury" pertains to organic brain damage while the decedent's injury was actually a fractured jaw. This contention is specious. There was testimony that even though a medical practitioner might not refer to a fractured jaw as a head injury, a layman might characterize it as such.

The only allegation of error advanced by the claimant in her cross-appeal is that the Board erred in overruling her motion to add interest from the date of the decedent's death until the accrued benefits are paid. Arguing from the premise that the employer's obligation to pay death benefits is con-

---

3. "Whatever may be said, one way or another, about drinking alcohol when a man is not working, we do not customarily attribute to the practice consequences of higher degree than carelessness or bad judgment." *Swanson v. Williams & Co.* (1951), 278 App.Div. 477, 106 N.Y.S.2d 61.

tractual in nature, she reasons that, in regard to liquidated amounts under contracts, interest accrues from the date when money is due which in this case is asserted to be the date of the decedent's death. These assertions miss the mark.

A proceeding for workmen's compensation is purely statutory in origin and procedure. Therefore the rights and obligations of the parties concerned must be determined by reference to the act of the Legislature. *Federal Cement & Tile Co. v. Pruitt, Admrx.* (1957), 128 Ind.App. 126, 146 N.E.2d 557. The Legislature in the enactment and amendments of the Workmen's Compensation Act has specified with particularity the factual situation giving rise to a right of compensation, the procedure to be observed in connection therewith and the awards that may be made. It is the statute itself that speaks with reference to these matters.

Obviously it was not the intent of the Legislature that rights or duties might be asserted in addition to those specifically granted and imposed. The provisions of the statute exclude implications. Whatever the reasons therefore, the fact remains that the Legislature has not seen fit to amend the statute by incorporating a provision for interest on an award from the date of death. Had the Legislature intended that administrative officers clothed with authority to carry out the provisions of the law might allow interest from the date of death in addition to the amounts fixed by way of compensation, it undoubtedly would have made a provision to that end. This was not done, however, and the courts have no authority to read into the statute a provision that the Legislature has purposely omitted. *Town of Schererville v. Vavrus* (1979), Ind.App., 389 N.E.2d 346. Whether interest from date of death should be allowed on an award is a matter for determination by the Legislature and not the courts.

Award affirmed.

Affirmed.

GARRARD, P. J., and STATON, J., concur.