MOOREHEAD ELECTRIC CO.,
INC., Appellant–Defendant,

v.

Jerry PAYNE, Appellee–Plaintiff.

No. 93A02–1105–EX–457.

Court of Appeals of Indiana.

Dec. 29, 2011.

Bruce J. Alvarado, Orfanos & Alvarado, LLC, Fortville, IN, Attorney for Appellant.

Neil E. Gath, Fillenwarth Dennerline Groth & Towe, LLP, Indianapolis, IN, Attorney for Appellee.

## OPINION

MATHIAS, Judge.

Moorehead Electric Company, Inc. ("Moorehead") appeals the Worker's Compensation Board's award of benefits to Jerry Payne ("Payne"). Mooreheard argues that the Board erred when it determined that Payne was entitled to benefits for an injury he sustained outside of the workplace but that arose from a prior, compensable injury. Concluding that the Board properly awarded benefits to Payne for the subsequent injury, we affirm.

### Facts and Procedural History

On September 2, 2008, Payne's right shoulder was injured during the course of his employment at Moorehead. Moorehead provided worker's compensation benefits for that injury and authorized two surgeries, which occurred on October 22, 2008 and April 7, 2009. After the April 7 surgery, Payne was instructed to wear a bulky shoulder brace twenty-four hours per day.

On April 18, 2009, Payne was attending a wedding reception in Indianapolis. Payne was walking to the reception venue when he fell and re-injured his right shoulder. Specifically, an individual carrying a rod with a large bag walked toward Payne "wedg[ing] his way right between" Payne and his wife, and a couple approaching them from the opposite direction. To avoid being struck by the individual's rod and bag, Payne stepped to his right and his foot hit a raised grate surrounding the base of a tree causing Payne to fall. The shoulder brace Payne was wearing contributed to his fall because it obstructed Payne's vision including his ability to see

his right foot and the raised grate on the sidewalk.

Because Payne re-injured his shoulder, he had a third surgery on July 7, 2009, and remained under his doctor's care until December 18, 2009. Moorehead paid worker's compensation benefits to Payne until September 7, 2009, which was the date Payne was expected to reach maximum medical improvement after the April 7 shoulder surgery. But Moorehead refused to pay worker's compensation benefits for the third surgery and additional disability benefits therefrom.

On May 27, 2010, Payne filed an Application for Adjustment of Claim with the Board alleging that the April 18 injury to his right shoulder arose out of and in the course of his employment with Moorehead. A single hearing member heard Payne's claim on November 9, 2010. Thereafter, a judgment was entered in Payne's favor. Moorehead was ordered to bear the cost of the third shoulder surgery and Payne was awarded temporary total disability benefits from September 7, 2009 through December 18, 2009.

The single hearing member issued the following findings of fact to support its award:

1. Defendant employed Plaintiff as of September 2, 2008 at an average weekly wage of $1,140.48.

2. On that date Plaintiff sustained personal injury by accident arising out of and in the course of his employment with Defendant. The injury was to his right shoulder.

3. .The employer had notice of the accidental injury and provided statutory medical treatment and compensation for temporary total disability.

4. Plaintiff underwent surgery on October 22, 2008 and a repeat surgery on April 7, 2009.

5. The surgical treatment for Plaintiff's work injuries left him with a temporary restriction of no use of his right arm. Plaintiff's right arm was also immobilized in a bulky cast or sling.

6. On April 18, 2009, while recovering from surgery, Plaintiff was walking to a wedding reception in downtown Indianapolis when he fell.

7. Plaintiff testified that his ability to walk was impaired by the brace, and also testified that his foot hit a raised portion of the grate on the sidewalk. Photographs of the brace and the location of Plaintiff's fall are in evidence.

8. Plaintiff was not performing any work-related activity at the moment of his fall.

9. Plaintiff's condition had not reached maximum medical improvement as of April 18, 2009.

10. Dr. Agrawal opined that but for the fall of April 19, 2009, Plaintiff's shoulder condition would have reached a state of maximum medical improvement as of September 7, 2009. Defendant therefore continued to pay Plaintiff compensation for temporary total disability through September 7, 2009.

11. Plaintiff underwent additional medical treatment due to the fall of April 18, 2009.

12. According to Dr. Agrawal[,] Plaintiff remained disabled and did not in fact reach maximum medical improvement until December 18, 2009.

13. Dr. Agrawal reported that Plaintiff sustained a 7% permanent impairment to the right upper extremity, and that the impairment was not affected by the fall of April 18, 2009.

14. The Board concludes by a preponderance of the evidence that Plaintiff's fall was in part caused by the circumstances of his recovery from the work

injury, including the immobilization of his right arm and his use of the cast or sling.

15. The period of recovery from a medical procedure such as that undergone by Plaintiff is marked by some increased risk of re-injury, especially where the patient has medical restrictions or is wearing temporary medical supplies such as casts, slings, braces and the like. Although the risk of re-injury in this case was small, it did have a causal relationship to Plaintiff's recovery from the work injury.

16. The Board observes that the owner of the premises where Plaintiff fell on April 18, 2009 may have legal liability to both Plaintiff and Defendant.

17. Defendant's position in this case was undertaken in good faith.

Appellant's App. pp. 5–7.

Moorehead appealed the single hearing member's decision to the Full Board claiming that the "award is contrary to law." *Id.* at 27. The Board adopted and affirmed the single hearing member's decision on April 28, 2011. Moorehead now appeals.

### Discussion and Decision

■■■ When we review a decision of the full Worker's Compensation Board, we are bound by the factual determinations of the Board and may only consider errors in the Board's conclusions. *Obetkovski v. Inland Steel Indus.*, 911 N.E.2d 1257, 1260 (Ind. Ct.App.2009), *trans. denied.* We will not disturb the Board's factual determinations unless the evidence is undisputed and leads inescapably to a contrary result. *Id.* Accordingly, on review of the Board's findings of fact, we must disregard all evidence unfavorable to the decision and may consider only the evidence and reasonable inferences drawn therefrom that support the Board's findings. *Id.* When reviewing the Board's decision, we neither reweigh

the evidence nor assess the credibility of the witnesses. *Id.* While we are not bound by the Board's legal conclusions, we will disturb the Board's conclusions only if it incorrectly interpreted the Worker's Compensation Act. *Id.* It is the claimant's burden to prove a right to compensation under the Act. *Id.*

■■■ The Worker's Compensation Act requires employers to provide their employees with "compensation for personal injury or death by accident arising out of and in the course of the employment[.]" Ind.Code § 22–3–2–2(a) (2005). An accident occurs in the course of employment "when it takes place within the period of employment, at a place where the employee may reasonably be, and while the employee is fulfilling the duties of employment or while engaged in doing something incidental thereto." *Pavese v. Cleaning Solutions*, 894 N.E.2d 570, 575 (Ind.Ct. App.2008). An injury arises out of employment when a causal nexus exists between the injury sustained and the duties or services performed by the employee. *Id.*

■■■ The parties do not dispute that Payne's initial right shoulder injury arose out of and in the course of his employment. It is " 'well settled that a subsequent incident or accident which results in a new, different or additional injury is compensable if it is of such nature and occurs under such circumstances that it can be considered as the proximate and natural result of the original injury.' " *Ind. State Police v. Wiessing*, 836 N.E.2d 1038, 1046 (Ind.Ct. App.2005) (quoting *Yarbrough v. Polar Ice & Fuel Co.*, 118 Ind.App. 321, 324, 79 N.E.2d 422, 423 (1948) (citations omitted)). " '[W]here the primary injury arises out of the employment, every consequence which flows from it likewise arises out of the employment.' " *Id.* (quoting *Yarbrough,*

118 Ind.App. at 324, 79 N.E.2d at 423 (quoting *United Paperboard Co. v. Lewis,* 65 Ind.App. 356, 117 N.E. 276, 278 (1917))).

Moorehead argues that the "causal connection between Payne's original work accident of September 2, 2008, and his second incident of April 18, 2009, was broken by an intervening act of a third person forcing Payne to hurriedly move out of the person's way to avoid being struck by that person and the pole and bag the third person was carrying." Appellant's Br. at 5. And Moorehead claims that Payne failed to act as a reasonably prudent person under the circumstances "by not stopping and allowing the man to pass, thereby causing his own fall." *Id.*

Our court has long held that "the subsequent incident or accident may be such as to constitute an independent intervening agency which breaks the chain of causation between the two injuries and relieves the employer of responsibility for the latter." *Wiessing,* 836 N.E.2d at 1046 (quoting *Yarbrough,* 118 Ind.App. at 324, 79 N.E.2d at 423).

> And this is true even though the first injury may have contributed to the second accident to some extent. . . . "Cases may arise where the elements of time and space and intervening causes may be so involved that the second injury could not be said to be the proximate, natural, and probable result of the original accident, or the second accident may so predominate that it overshadows the original cause." Lack of ordinary care on the part of the claimant which proximately results in the second accident has been held to constitute an independent intervening agency which breaks the chain of causation between the two injuries and thus bars recovery for the second.

*Id.* at 1046–47 (quoting *Yarbrough,* 118 Ind.App. at 324–25, 79 N.E.2d at 423–24) (internal citations omitted).

Whether Payne's accidental fall was the proximate and natural result of the original injury or whether it was the proximate result of his own negligence, and therefore should be regarded as an independent intervening cause, was a question of fact for the Board. *See Yarbrough,* 118 Ind.App. at 326, 79 N.E.2d at 424 (stating "the employer's liability for a second injury depends upon an unbroken chain of causation between it and such primary injury and the chain is broken when any independent agency, including the claimant's negligence, intervenes and becomes the proximate cause of the second accident"). And " 'if a rather slender thread of evidence' supports the Board's decision, we must affirm because the Board 'has the power to determine the ultimate facts in the case.' " *Wiessing,* 836 N.E.2d at 1046 (citations omitted).

In *Yarbrough,* the claimant injured his knee through an accident arising out of and in the course of his employment. Approximately six months later, he reinjured his knee when he fell down a flight of stairs while carrying an armload of trash. Prior to the second injury, the claimant had fallen several times because his injured knee "suddenly gave way." 118 Ind. App. at 323, 79 N.E.2d at 423. The Board denied compensation benefits because the actions of the claimant in carrying trash down a flight of stairs knowing that his knee was weak and gave way unexpectedly was not the act of an ordinary and prudent man under the circumstances. *Id.* at 325–26, 79 N.E.2d at 424. And the Board's judgment was affirmed by our court on appeal.

In *Joseph E. Seagram & Sons., Inc. v. Willis,* 401 N.E.2d 87 (Ind.Ct.App.1980), Willis suffered a head injury arising out of

and in the course of his employment. He was released to return to "light duty work" but never did so because he continued to suffer severe headaches. *Id.* at 89. Willis was prescribed pain medication for the headaches. Willis later died because he ingested alcohol while he was taking the pain medication. Willis's widow filed an application for worker's compensation benefits after his death. The Board awarded benefits and the employer appealed arguing that there was no "causal connection between" Willis's work-related injury and his death because his "intoxication was an independent intervening agency which broke the chain of causation." *Id.*

Our court concluded that the Board's award was not contrary to law after observing that:

> certain conduct on the part of the decedent such as negligence or intoxication may constitute an intervening cause of the subsequent injury thereby relieving the employer of liability. Where the injured rashly undertakes a line of action with knowledge of the risks involved in the activity in light of the condition stemming from the industrial injury, the causative chain from the industrial injury is broken as to the subsequent accident caused by such conduct. However, a distinction must be drawn between such conduct and mere carelessness or errors of judgment which do not break the causative chain.

*Id.* at 90. Because the question of whether Willis's death was the proximate and natural result of his industrial injury or the proximate result of his negligence in drinking while under sedation, and hence should be considered as an independent intervening agency, was a question of fact for the Board to resolve, our court appropriately deferred to the Board's finding that Willis's conduct "was nothing more than mere carelessness." *Id.* at 91. Specifically, Willis's doctor could not recall whether he warned Willis not to drink alcohol while taking the pain medication. *Id.* And therefore, "an inference could be drawn that the decedent was unaware that his actions, in light of his condition stemming from the original injury, posed a risk of injury or death." *Id.* We concluded that the Board "quite properly found that the industrial injury was a proximate cause of death in that the injury need not be the sole cause of death but only a contributing or concurring cause." *Id.*

In the case before us, there is evidence supporting the Board's finding that Payne's ability to walk was impaired by the right shoulder brace. A photograph of Payne wearing the brace was admitted into evidence at the hearing, which established the bulk and significant size of the medical device. Payne testified that the bulk of the brace impaired his ability to see his feet and the raised portion of the grate surrounding the tree on the sidewalk. And the brace caused his right arm to be in a position away from his body, which further impeded his ability to see his feet and the ground.[1] Tr. p. 8.

Payne may have contributed to the subsequent injury by failing to fully stop to allow the oncoming individual to pass, as Moorehead claims. But his conduct was

---

1. Citing *Muncie Ind. Transit Authority v. Smith*, 743 N.E.2d 1214, 1217 (Ind.Ct.App. 2001), Moorehead claims that Payne was required to establish the causal connection between the two injuries by expert medical evidence. Appellant's Br. at 3. But the holding in that case, requiring medical evidence to establish a causal relationship between the employment and the injury, is limited to injuries not caused by "a sudden and unexpected event." *Id.* at 1217 (holding that the Board's decision was contrary to law because it was "based solely on Smith's testimony and is not supported by medical evidence which shows a causal relationship between Smith's employment and his carpal tunnel syndrome").

not less than the conduct of a reasonable person in the same or similar circumstances. Payne did not act negligently as a matter of law when he stepped to the right to remove himself from the approaching individual's path. The Board's conclusion in this regard was not an error of law.

The single hearing member's findings, which were adopted and affirmed by the Board and are supported by the evidence, lead to the conclusion that the right shoulder brace, which Payne was required to wear because of the original workplace shoulder injury, contributed to his April 18, 2009 fall due to its bulk and the fact that it impeded visibility. Consequently, the subsequent injury was a proximate result of the original shoulder injury that undisputedly arose out of and in the course of Payne's employment with Moorehead. In other words, because the original shoulder injury arose out of Payne's employment, and there was no intervening, causal act of negligence, the subsequent injury is a consequence which flows from it, and therefore, likewise arises out of his employment with Moorehead. *See Yarbrough,* 118 Ind.App. at 324, 79 N.E.2d at 423. For all of these reasons, and under our deferential standard of review of the determinations of administrative agencies, we affirm the Board's award of worker's compensation benefits to Payne for the subsequent shoulder injury resulting from his fall on April 18, 2009.

Affirmed.

FRIEDLANDER, J., and RILEY, J., concur.